J. GRANT FRYE, APPELLANT, v. KATHRYN BASKIN, RESPONDENT, v. JOHN FRYE, THIRD PARTY DEFENDANT.—231 SW (2) 630.

Springfield Court of Appeals.   Opinion delivered June 8, 1950.

*J. Grant Frye,* Pro Se, for Appellant.

*Lehman Finch, Finch* and *Finch,* for Respondent.

328

VANDEVENTER, P. J.—This is an action for damages to a jeep. It was begun in the magistrate court of Cape Girardeau County. The defendant was permitted to file a third party petition against

John Frye, minor son of plaintiff. The cause was tried in the magistrate's court, where a verdict was rendered against plaintiff but there was no verdict on the third party petition. Guardians ad litem were duly appointed for John Frye and Kathryn Baskin, who was also a minor.

Plaintiff appealed to the circuit court of Cape Girardeau County, a change of venue was taken and it was tried in Mississippi County on the pleadings filed in the magistrate's court. The jury there returned a verdict against plaintiff and against defendant on her third party petition. From judgment rendered upon these verdicts, plaintiff, alone, has appealed.

There is very little contradiction in the evidence. Plaintiff lived ten or twelve miles from Cape Girardeau. On March 1, 1947, he purchased a new jeep, paying therefor the sum of $1443.37. Nine days later and when it had been run approximately 150 miles, plaintiff let his son, John Frye, have it to drive to a National Guard meeting in Cape Girardeau. Plaintiff offered to show that he instructed his son "to let no one drive that car under any circumstances." The court refused this offer. About 9 o'clock that night, John Frye and a friend, Don Carner, appeared at a theater in Cape Girardeau where defendant Kathryn Baskin worked as an usher. Her friend, Jacqueline Brunke also worked there. The two boys made a date with the two girls to return about ten o'clock and take them for a ride. They returned about that time and Don Garner and Jacqueline Brunke got in the front seat, Don Garner driving, with John Frye and Kathryn Baskin in the rear seat. They first drove to a Barbecue Stand, where they obtained refreshments. When they left that place, John Frye drove the jeep, Kathryn Baskin riding with him in the front seat and the two others in the rear. While they were driving around, John Frye asked Kathryn Baskin if she could drive a car. She said she could but had never driven a jeep or been in one before. He stopped the car a little later, got out and went around to the right side. She asked what he was doing and he said he intended to let her drive. She then told him she was merely joking when she said she could drive, that she had never driven a car and knew nothing about it. He then told her he would teach her to drive, and at his request, she got under the wheel and he sat in the front seat beside her. He showed her how to start the car, how to use the clutch, how to shift the gear and where the brakes were. Under his tutelage, she drove down through the main part of town and turned to the right on Independence Boulevard. This is a thoroughfare running east and west and across U. S. Highway 61 at the west edge of town. It was about 10:30 or 10:45 p. m. When they approached Highway 61, Kathryn said,

"What way should we go?" and someone said, "Turn to the right." Kathryn Baskin did not know who said it, but Jacqueline Brunke thought it was John Frye as he was in the front seat directing the operations. Kathryn turned the car to the right to go north on Highway 61, had proceeded until the the car was at about a 45 degree angle to 61, when John must have changed his mind, for he said, "No, turn to the left." She immediately turned the wheel of the car to the left and apparently was too far across Highway 61 to make the turn and ran off into a ditch, six or eight feet deep, and turned over one time, at the southwest intersection of Independence Boulevard and Highway 61. The damage to the car was about $200.00.

Kathryn testified that as she approached Highway 61, she guessed she was travelling about 50 or 60 miles an hour, that she did not know. There was no dashlight on the car and she never saw the speedometer. Jacqueline testified that their speed out Independence Avenue was about 25 miles per hour, that they slowed down and as they approached Highway 61, they were going at about 20 miles an hour. They were the only witnesses, who testified as to the accident. Kathryn was called as a witness by plaintiff. Jacqueline was called by defendant Baskin. Neither John Frye nor Don Garner testified.

Appellant, in his brief, asserts and here proceeds upon the theory, that his action from the beginning was one for trespass. He insists that the allegations of negligence should be treated as surplusage. His petition in full follows:

"For his cause of action plaintiff states:

"1. That on May ——, 1947 plaintiff allowed his son John to drive plaintiff's jeep.

"2. That said son John, without authority of plaintiff, allowed defendant to drive said jeep and she *carelessly and negligently drove at a high and dangerous rate of speed under the circumstances and* overturned the same, wrecking it, marring and scarring it, and damaging it in the sum of $150.00.

"3. That defendant is a minor and has no legally appointed guardian.

"Wherefore, plaintiff prays judgment against defendant for $150.00 and further prays that a guardian ad litem be appointed to represent her in these proceedings." (Italics ours.)

At the close of all the evidence plaintiff, as attorney for and on behalf of his son, third party defendant, moved the court for a directed verdict in his son's favor upon the ground that defendant's evidence was insufficient to show his son's acts constituted any negligence as to her and that the testimony showed that she was negligent as a matter of law. It was insisted that to drive at the speed shown by the evidence at the intersection, where the accident occurred, constituted negligence as a matter of law and that though John told

her to turn to the left, she was under no obligation to do a negligent act because suggested by someone else.

Plaintiff, as attorney for third party defendant, also requested the court to give an instruction on contributory negligence as applied to defendant Baskin. The instructions given by the court, at the request of defendant, were upon the theory of negligence. The motion for new trial nowhere mentions or suggests that the theory at the trial was one of trespass. It is a well known rule of law that the appellate courts will review the case only upon the theory presented in the trial court. Ellis Gray Milling Co. v. Sheppard (Mo. App.) 215 S. W. (2) 57. Kolb v. Howard Corp. (Mo. App.) 219 S. W. (2) 856. Humphries v. Shipp, 194 S. W. (2) 693, 238 Mo. App. 985. Simmons et al. v. Friday (Mo. Sup.) 224 S. W. (2) 90. One cannot abandon the theory upon which his case was tried and have it reviewed upon an altogether different one.

However, the evidence in this case does not show such a trespass on the part of defendant as to make her liable to plaintiff. Trespass involves the idea of force. The principle is elementary that trespass lies whenever an injury to plaintiff's property, against his will, is the immediate result of a forceful, unlawful or wrongful act (not in a criminal sense) by the trespasser, the consequences of which make them tortious. Mawson v. Vess Beverage Co. (Mo. App.) 173 S. W. (2) 606. 52 Am. Jurs. Trespass, Sec. 1.

There is a clear difference between a trespasser and an invitee or guest so far as riding in a passenger automobile is concerned. Assuming that the court had admitted the testimony of plaintiff that he instructed his son to let no one drive the jeep under any circumstances, does it constitute actionable trespass for a person on invitation of the driver in possession of a passenger automobile to enter the car? It is not even contended that defendant knew who owned the car. She was informed that it was new, but she did not know that plaintiff had issued any such instructions to his son, or that the son or Don Garner was not the owner. If a violation of those instructions made the person driving the car a trespasser, did it make one entering the car one also? Certainly it does not constitute actionable trespass to innocently enter a passenger car and ride at the request of the driver, with whom you are acquainted, and who is in full possession, without any knowledge that he is not the owner or that there are any restrictions on his use of the motor vehicle. Suppose the instructions of the plaintiff to his son had been to let no one ride in the car. Would she have been a trespasser under those circumstances? Suppose those instructions had been to let no one ride in the back seat of the car. Would she have been a trespasser riding in the back seat and an invitee if she had ridden in the front seat? Can the plaintiff invest another with possession and apparent ownership of a passenger automobile, and by giving secret instructions

to that person cause anyone riding with him, however innocently, to become a trespasser to such an extent as to make him liable for damages? Is every person, who accepts an invitation to ride in a passenger automobile driven by anyone except the record owner, a trespasser ab initio, and liable for at least nominal damage to the unknown owner? (See Am. Jur. Trespass, Sec. 47). If defendant had gotten out at the Barbecue Stand before she took the wheel of the jeep, would she have been a trespasser or just when did her status as such begin? Would she have been a trespasser if the accident had not occurred? Can she be an invitee on the ride and immediately become a trespasser by taking the wheel in violation of some secret instructions, of which she knew nothing? We recognize the rule that she could not, under the facts, have collected from plaintiff for injuries she might have suffered in an accident, under the doctrine of *respondeat-superior,* but we do not believe she was such a trespasser under the facts in this case as would permit plaintiff to collect damages from her on that theory. He had invested his son with possession of the jeep. Possession of personal property raises a presumption of ownership, (20 Am. Jur. Evidence, Sec. 237) and defendant, upon entering the car upon the invitation of the party in possession did not become such a tortious trespasser as to make her liable to the real but unknown owner for injuries to it, based alone upon her status as a trespasser. And whether or not the court admitted evidence of plaintiff's instructions to his son would not alter the situation. Its refusal was not error.

Furthermore, if you leave from the petition the allegation of negligence, which, for clarity, we have italicized, it does not charge trespass. It does not allege a forcible, wrongful, unlawful or tortious act upon the part of defendant and against the will of the plaintiff, neither does it allege facts from which such allegations could be deduced. It has been held that to state a cause of action in trespass, the petition must allege that the injury complained of was direct and immediate upon the defendant's act and not merely consequential. Mawson v. Vess Beverage Co. (Mo. App.) 173 S. W. (2) 606, l. c. 613. Though formal pleadings are not required in the magistrate's court, where plaintiff elected to so plead, he is bound to the same extent as if the action had originally been filed in the circuit court. Badgett v. Hartford Fire Ins. Co. 188 S. W. (2) 761, 238 Mo. App. 797.

But, be that as it may, plaintiff cannot now abandon his trial court theory of negligence and proceed in this court upon the theory of liability as a trespasser.

Neither does the evidence show negligence on the part of defendant as a matter of law, (if it shows negligence at all, which we need not decide.) While she states that she guessed she was traveling 50 or 60 miles an hour while approaching U. S. Highway 61, she further stated she did not know her speed and we, (assuming she guessed

correctly) are not in a position to say that approaching Highway 61 at 10:30 at night at 50 or 60 miles an hour was negligence per se. There was evidence that a wide apron on each side of Independence Avenue connected with Highway 61, so the turn was not absolutely abrupt, and there was no evidence of congested traffic. There was no evidence of obstructed vision north or south on 61. The evidence also showed that Independence Avenue proceeded on westwardly across Highway 61, and no turn was necessary. The other witness testified that they approached the highway at the speed of 20 miles per hour and the jury might have believed her version of it. It is true she turned the car to the left, when John Frye ordered her to do so, and the car went into the ditch but that would not, as a matter of law, make her negligent.

All the evidence relating to the relative positions of the driver (Kathryn) and the instructor (John) was before the jury. They knew that Kathryn knew nothing about the operation of an automobile and that she was completely under the control, tutelage and domination of John. She had to be shown where the brakes were, to say nothing of being instructed as to their functions. She had never driven any car and she had never before been in a jeep. As far as John was concerned, she controlled the car the same as if she had been a robot or an automaton. When John said "turn", she turned, mechanically, she was the instrumentality by which John drove the car. Haynie et al. v. Jones et al. 127 S. W. (2) 105, 233 Mo. App. 948. The operation of the car was under John's control as much as if he had merely had a longer arm by which he would control it from the right side. Grant v. Knepfer 245 N. Y. 158, 156 N. E. 650. 54 A. L. R. 845, Cardoza, Ch. J. "Where one permits another to operate a car but remains in control, the driver is no more than an alter ego of the other and his acts are in effect just as much the acts of that other as though (the latter) were the one actually operating the car." Archambault v. Holmes 125 Conn. 167, 4 A. (2) 240. Burwell v. Neumann et al. 32 A. (2) 640, 130 Conn. 117. Woodson v. Hare, 244 Ala. 301, 13 So. (2) 172.

We may assume that John was a licensed driver or he would not have been in charge of and driving plaintiff's jeep. We may also assume that Kathryn was not a licensed driver because she could not have obtained a license unless she was qualified to drive. Sec. 8450 M. R. S. A. Rather would she come under the provision of Sec. 8448 M. R. S. A., which permits one, who is not qualified to drive, to learn under "a temporary instruction permit" and this section requires that such learner "must be accompanied by a licensed operator, chauffeur or registered operator who is actually occupying a seat beside the driver." Undoubtedly the reason for requiring him to occupy the seat beside the driver is so that he can control and supervise her and the operations of the automobile. It is possible

for the instructor to be negligent and the pupil, though following his instructions, to be free from negligence. In the leading case of Greenie v. Nashua Buick Co. 85 N. H. 316, 158 A. 817, a man by the name of Peck, 74 years of age, had driven, for many years, an old Ford "with the old shifts" but he had never operated a gear shift car. The defendant sold him such a car and agreed to teach him to drive. He was given some theoretical instructions in defendant's place of business and then placed under the wheel with defendant's agent (one Tarbell) beside him. He was proceeding down a well traveled street in the center thereof at about 20 miles per hour. The plaintiff came out from a side street, noticed the slow progression of Peck and thinking he was stopping to let her pass, proceeded to the center of the street. Peck, with defendant's agent sitting beside him, started to put his foot on the brake and stop his car but actually depressed the accelerator, causing the Buick to lurch forward and collide with plaintiff's car. Plaintiff sued the defendant and Peck. The jury found for Peck but found against the defendant. On appeal the point was raised that the verdicts were inconsistent. The court said:

"The validity of the foregoing conclusions is not affected by the jury's finding, implicit in its verdicts, that Peck was not negligent. Although the jury must have found that it was not negligent for Peck to attempt to drive the car at the time and place of the accident, this finding does not compel a conclusion that Tarbell was free from fault in allowing him to take the wheel. Even though Peck realized his limitations as a driver, it might be found that having placed himself under Tarbell's direction for the purpose of receiving instruction, he was justified in relying upon Tarbell's judgment as to the proper time and place for him to undertake the actual operation of the car. No exoneration of Tarbell would be implied in such a finding."

In this case the jury undoubtedly found that when Kathryn turned to the left, at John's command, she was merely obeying the instructions of a licensed driver and instructor and, if it were negligence, it was John's and not hers. A learner would be more negligent in refusing to obey the command of the qualified instructor than in obeying it.

To take the most liberal view, from the standpoint of plaintiff, the entire evidence created a question of fact for the jury and it decided against him. We cannot interfere with its verdict by weighing the evidence ourselves.

Neither did the court err in refusing to give plaintiff's offered instruction No. I. That would have been in effect a directed verdict and for the reasons heretofore stated, plaintiff was not entitled to it.

As has been stated, defendant was permitted in the magistrate's court to file a third party petition bringing in plaintiff's son as third

party defendant. In the magistrate's court and in the circuit court, plaintiff and third party defendant moved to dismiss the third party petition because there was no statutory authority for filing such in the magistrate's court. These motions were overruled and of this action, plaintiff complains.

We find no direct authority for filing a third-party petition in a magistrate's court but we cannot hold that reversible error was committed in the trial court in hearing the testimony on the third party petition. If this case had been filed directly in the circuit court, such a petition could have been filed with statutory authority. Laws of Missouri, 1943, page 362, Sec. 20. Sec. 847-20 Mo. R. S. A. It could then have been heard in a manner consistent with the provisions of the New Civil Code without injury to plaintiff's rights and while it was irregular to file it in the magistrate's court and bring it to the circuit court on appeal, we cannot see how plaintiff would have been any more injured by such procedure than if it had been filed directly in the circuit court. It must be remembered that the third party petition was filed by the defendant and that plaintiff's son was third party defendant. His son won on the third party petition and of course had no occasion to appeal. The defendant lost and did not appeal. The evidence as presented in this case, as we view it, was exactly the same as if no third party petition had ever been filed. Therefore, we are unable to see how plaintiff could have been injured by the third party petition, even though there is no statutory authority for such filing. If it was error as to the plaintiff, it was harmless error and not of such gravity as would justify the reversal of this cause.

Plaintiff also objects to the court's failure to give certain instructions offered on behalf of the third party defendant. As stated, the third party defendant won, was not injured, and if error was committed in the refusal to give these instructions, it is not such error as can be taken advantage of by the plaintiff.

The plaintiff also objects for the failure of the court to give instruction No. 2, requested by him and which is as follows:

"The court instructs the jury: J. Grant Frye had a right to sue either or both of Kathryn Baskin or John Frye, and it is no defense to Kathryn Baskin in his claim against her that he did not also sue his son John. Nor does the fact that he did not also sue his son John, of itself, give her any valid claim against John."

This instruction contains an abstract statement of the law and is slightly argumentative. In refusing to give it, the court did not abuse its discretion, and such action was not reversible error.

Neither was it error to refuse to give instruction No. 3, offered by plaintiff, for the same reason. That refused instruction states:

"The court instructs the jury: Neither the difference in age,

sex, station in life, or relationship of any of the parties should be permitted here to influence your verdict. All persons are equal before the law and are entitled to the same careful and fair consideration of their case. You are to be governed in your deliberations solely by the facts as you honestly find them to be and of the application of law as given you in the instructions to those facts."

We think the case was fairly presented upon plaintiff's instruction A, and defendant's instructions B, C, D and E and for the reasons stated in this opinion, we overrule plaintiff's contentions that the giving of instructions B, C, D and E was error.

Plaintiff also objects to the forms of verdict submitted by the court but the record does not show any objection to those forms thereby giving the trial court an opportunity to consider their correctness. However, we have examined the verdicts and find no error therein. The jury had a form for any verdict it was permitted to find under the instructions and we must assume it was composed of men of ordinary intelligence, and if so, could not have been confused.

We have carefully and patiently considered the many cases and statutes cited by plaintiff in his 15 pages of points and authorities. To discuss them singly would unnecessarily lengthen this opinion. They do not, however, change our views as to the decision in this case.

The judgment of the trial court should be affirmed. It is so ordered. *Blair, J.,* and *McDowell, J.,* concur.