Francis GANDY, Plaintiff-Appellant,

v.

TERMINAL RAILROAD ASSOCIATION
OF ST. LOUIS, a Corporation,
Defendant-Appellant,

and

Northwestern Cooperage Company,
Defendant-Respondent.

Nos. 43285, 43286.

Missouri Court of Appeals,
Eastern District,
Division Three.

Sept. 22, 1981.

Ray B. Marglous, Clayton, for plaintiff-appellant.

Michael W. Newport, St. Louis, for defendant-appellant.

Anthony F. Vaiana, St. Louis, for defendant-respondent.

SNYDER, Judge.

This is an appeal from the circuit court judgment which vacated a jury verdict, set aside a judgment in favor of plaintiff-appellant Francis Gandy, and entered judgment in accordance with a motion for a directed verdict in favor of defendant-respondent Northwestern Cooperage Company.

Appellant sued Northwestern Cooperage Company (Northwestern) and Terminal Railroad Association of St. Louis (Terminal Railroad) for personal injuries sustained when appellant's truck was struck by a Terminal Railroad train while appellant was making a delivery of containers to Northwestern. Cefus Jones, an employee of Northwestern, was a passenger in the truck. Appellant argues that Northwestern, through Jones, had a duty to direct the operation of the truck, a duty which Northwestern breached.

Appellant's single point relied on charges the trial court erred in granting, on the ground that respondent owed no duty to appellant, respondent's motion for judgment notwithstanding the jury's verdict. The point is ruled against appellant and the judgment is affirmed.

The following are the facts as construed in the light most favorable to appellant. Appellant was employed as a truck driver for Midwest Graphic Finishers, Inc., Pacific, Missouri. On September 11, 1974 he delivered a load of containers to Northwestern Cooperage Company, located at the end of Ferry Street in St. Louis, Missouri. He had made deliveries to Northwestern on four or five previous occasions. Upon arrival at the entrance of Northwestern's place of business, appellant saw a sign which informed all drivers to report to the office. At the office, appellant was introduced to a Northwestern employee, Cefus Jones, and was told that Jones would show him where to unload the containers.

Appellant, accompanied by Jones, and under his direction, proceeded to travel east between two buildings on Ferry Street; he turned north on the dirt road which ran generally north and south and parallel to four sets of railroad tracks. Before Jones instructed appellant to turn north on the road that ran parallel to the tracks, appellant saw several boxcars slightly south of him on the first set of tracks, the front portion of the diesel engine almost directly in front of him on the second set of tracks, and a boxcar sitting on the first set of tracks about 50 to 75 feet to the north. Appellant traveled about 100 feet north until Jones pointed to the left to an opening between some containers and said, "This is where we have to back in to unload the drums, the containers." At this point the train tracks were about three feet from the right side of the truck.

Appellant was driving a 1968 International straight truck with a freight box on the back. Because there were empty containers all over the road and the opening was only wide enough for the truck to back straight in, appellant had to turn the truck to the right onto the tracks in order to back the truck into the space. Appellant, when asked if he had made his own determination to cross the tracks, replied, "No. Cefus told me I would have to pull out on the tracks and then back into that."

Appellant then stated to Jones, "Well, watch in case that train decides to start up down there and I will watch the left, the front, and my rearview mirrors." Appellant received no response from Jones. Determining it was safe to proceed onto the tracks, appellant began to turn in a northeasterly direction, crossing the first set of tracks and partially crossing the second set of tracks. Appellant did not look to the right, or south, before crossing the second set of tracks. Appellant was trying to look in several directions, mainly north, but he could not see to the south, in the direction

of the engine, because the back of the truck's cab and the big box blocked his view. Once on the tracks, appellant stopped for a second, shifted into reverse and backed up about one foot when the train struck the box portion of the truck. Jones did not warn appellant of the oncoming train. Appellant also heard no train bells or whistles at the time of the collision.

The jury returned a verdict in the amount of $15,000 in favor of appellant and apportioned $10,000 against Northwestern and $5,000 against Terminal Railroad. Defendants then filed timely post-trial motions for judgments in accordance with their respective motions for directed verdicts and in the alternative, motions for new trials. The trial court granted Terminal Railroad's motion for a new trial. The trial court granted Northwestern's motion for judgment in accordance with its motion for a directed verdict on the grounds that Northwestern owed no duty to appellant, did not breach any duty owed appellant, and was guilty of no negligence which caused or contributed to cause appellant's injuries. Appellant appealed from both judgments.[1]

Appellant insists the trial court erred when it concluded that Jones owed no duty to appellant to keep a careful lookout for the train. The trial court ruled properly and the appeal must be denied.

■ An essential element in any negligence action is the existence of a duty which defendant owes to the plaintiff. *Vanacek v. St. Louis Public Service Co.*, 358 S.W.2d 808, 810–811[1–3] (Mo.banc) *cert. denied* 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962); *Dix v. Motor Market, Inc.*, 540 S.W.2d 927, 932[6–8] (Mo.App. 1976). *See* Prosser, Law of Torts § 53 (4th Ed. 1971). Northwestern owed no duty to appellant to direct the operation of the truck so as to avoid the collision with the train. Northwestern's employee, Cefus Jones, was only a passenger in the truck. His duty was to show appellant where to unload his cargo, not to direct the actual driving or operation of the truck.

■ Ordinarily, a passenger in an automobile is only under a duty to exercise ordinary care for his own safety. *Happy v. Blanton*, 303 S.W.2d 633, 638[8] (Mo. 1957). This duty may require a passenger to keep a careful lookout in situations were the driver has been exercising a visible lack of caution or when the passenger knows of imminent danger. This duty, however, is a duty the passenger owes only to himself and not to the driver or any other person. In this case the breach of this duty may have precluded Jones from recovering for his own injuries resulting from the accident; however, the breach of this duty is not a basis on which appellant may recover. *See Vanacek v. St. Louis Public Service Co., supra; Dix v. Motor Market, Inc., supra.*

Appellant contends, however, that Jones, in his position as guide, was more than a mere passenger. Appellant argues that, as a guide, Jones owed an additional duty to aid in the safe operation of the truck. Appellant points out that Northwestern required that appellant be accompanied by a guide and that Jones told appellant where to turn, where to park, and instructed appellant to pull out onto the railroad track. Based on these facts appellant claims Jones actually controlled the truck and therefore, should be held to a duty of reasonable care to aid in the truck's safe operation. Appellant cites a case involving a vehicle operated by a student driver and a driving instructor to support his theory. The facts are not analogous.

■ In the student driver situation, the passenger-instructor is responsible for the safe operation of the vehicle. *Frye v. Baskin*, 241 Mo.App. 319, 231 S.W.2d 630, 635[11] (Mo.App. 1950). This court, however, finds that the guide relationship between appellant and Jones is not sufficiently similar to the instructor-student relationship to warrant imposing a similar duty of care on Jones.

In the instructor-student situation, both parties enter the automobile with the

---

1. The appeal with respect to Terminal Railroad has since been dismissed with prejudice and

Terminal Railroad is no longer a party to this action.

understanding that the driver is incompetent to operate the vehicle and that the instructor will supervise and control the operation of the vehicle. The court in *Frye, supra,* referred to the driver as an "instrumentality" of the instructor or a "robot or an automaton" who followed the instructor's directions mechanically. *Frye v. Baskin, supra* at 635[11]. By asserting such complete control over the driver, the instructor assumes the duty of reasonable care to operate the vehicle safely.

In the situation before this court, neither party entered the truck with the assumption that appellant needed guidance on how to safely operate a truck. Indeed, since appellant was employed as a truck driver, it can fairly be assumed that appellant was a competent, licensed driver. Jones controlled the operation of the truck only to the extent that he told appellant where to park the truck for purposes of unloading. Jones did not tell appellant how fast to drive or when to shift gears or make any other of the technical judgments necessary when operating a motor vehicle.

It is true that, according to appellant, Jones instructed him to drive onto the tracks. Appellant also stated, though, that the only way to park the truck in the designated spot was to pull out on the tracks. In order to perform his duty as delivery truck driver, therefore, appellant had to pull out on the track regardless of whether Jones instructed him to or not. Appellant also stated that he made his own, independent determination of when it was safe to pull out onto the tracks. Appellant thereby indicated that he did not relinquish control over the operation of the vehicle to Jones.

This court finds that appellant was not a mere instrumentality of Jones. Therefore, Jones did not control the operation of the truck and so did not assume any duty other than the duty of a passenger to use reasonable care to protect himself. *Happy v. Blanton, supra.*

There is also no evidence Jones voluntarily assumed the duty to keep a lookout for the train. Appellant correctly points out that one who gratuitously assumes to act must perform the act with reasonable care. *Vandeventer v. Shields,* 241 S.W.2d 53, 58[4, 5] (Mo.App. 1951). However, there is no evidence Jones agreed to appellant's request for help; neither is there any indication he actually attempted to keep a lookout. Appellant's mere request for assistance did not raise a duty in Jones to help. *See* Prosser, *supra,* § 56.

There was no error. The judgment is affirmed.

CRIST, P.J., and REINHARD, J., concur.