SHELTER MUTUAL INSURANCE
COMPANY, Plaintiff,

v.

Ronald J. WHITE, Melinda J. White, Brandon S. White, and Booker Stigger, Defendants,

and

Jason M. Williams, Kelley G. Monroe, and Jesse D. Barger, Respondents,

and

Roger E. Ash, Jerry Peppers, and Sharon Peppers, Appellants.

No. WD 51891.

Missouri Court of Appeals,
Western District.

June 18, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied
Oct. 22, 1996.

**2**

Gordon Gee, Kansas City, for appellants.

Edwin Proctor, Kansas City, Rhonda Loepke, Kansas City, Robert Hill, Richmond, for respondents.

SPINDEN, Judge.

The appellants ask us to permit them to sue the passengers of a vehicle involved in a fatal crash in late 1992 in Richmond on the theory that the passengers encouraged the driver to operate the vehicle negligently. The circuit court dismissed all of the appellants' claims against the passengers. We reverse in part and affirm in part.

On December 5, 1992, Brandon White, while intoxicated, drove a pickup at excessive speed past a stop sign without stopping, and the pickup crashed into another pickup driven by Roger Ash.[1] The crash severely injured Ash and killed his passenger and fiancé, Karen Peppers.

Shelter Mutual Insurance Company insured White's pickup. On April 22, 1993, it

interpleaded $100,000, the full amount of its obligation, and named as defendants all individuals who it perceived might have a claim to the insurance proceeds. On June 1, 1993, Jerry and Sharon Peppers, parents of Karen Peppers, and Ash filed a cross-claim against three passengers in White's pickup: Jason M. Williams, Kelley G. Monroe, and Jesse D. Barger.[2] The Pepperses and Ash averred:

> On information and belief, defendants Jason M. Williams, Kelley G. Monroe and Jesse D. Barger each were negligent in that: (a) each supplied defendant Brandon S. White with beer to drink while driving; (b) each encouraged defendant Brandon S. White to operate the pick-up truck which he was driving at an excessive rate of speed, to ignore traffic signs, and to operate the pick-up while under the influence of intoxicating liquor; and (c) each distracted defendant Brandon S. White by making noise and engaging in other boisterous conduct.

Ash and the Pepperses contend that Missouri law should recognize in a situation such as this one that passengers in a motor vehicle have a duty to third persons and may be liable for injuries caused to such persons. We consider each of their three contentions separately.

 As to their first contention—that the passengers supplied White with beer— Missouri courts do not recognize such a cause of action. One who furnishes alcoholic beverages to another does not have a duty to third persons injured as a result of the consumption of the beverages. The General Assembly has announced this public policy in § 537.053, RSMo 1994: "[T]he consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, [is] the proximate cause of injuries inflicted upon another by an intoxicated person." *See Elliot v. Kesler*, 799 S.W.2d 97, 101 (Mo.App.1990). The circuit court properly dismissed the first of Ash's and the Pepperses' three claims.

---

1. Because we are reviewing a motion to dismiss, we deem the facts pleaded to be true.

2. All claims against White have been settled. Naomi Nash also filed a cross-claim, but her

claim was not included in the legal file, and the parties do not identify her. The parties also fail to identify Booker Stigger.

■ The circuit court, however, erred in dismissing their second claim—that the passengers negligently "encouraged" White to speed, to ignore traffic signs, and to drive while under liquor's "influence." Ash and the Pepperses cite several cases from other jurisdictions in support of the proposition that passengers may be liable to third parties. *See Cooper v. Bondoni*, 841 P.2d 608 (Okla.App.1992); *Sanke v. Bechina*, 216 Ill. App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212 (1991); *Solberg v. Johnson* 90 Or.App. 90, 750 P.2d 1190 (1988);[3] and *Price v. Halstead*, 177 W.Va. 592, 355 S.E.2d 380 (1987).[4] All of these cases applied *Restatement (Second) of Torts* § 876 (1979), which says:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
>
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
>
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Comment d to this restatement is illuminating:

> Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a

tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended [one] and when it is merely a negligent act. The rule applies whether or not the other knows his act is tortious. . . . It likewise applies to a person who knowingly gives substantial aid to another who, as he knows, intends to do a tortious act.

> The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. . . . Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts by the other . . ., ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him. . . . In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence . . . or recklessness.

Williams, Monroe and Barger respond to the restatement by suggesting that Missouri courts have not recognized a tort based upon § 876. We do not agree.

The Missouri Supreme Court considered application of § 876 to a product liability action in *Zafft v. Eli Lilly and Company*, 676 S.W.2d 241, 245 (1984). The court noted § 876 and similar theories articulated in *Prosser, Law of Torts* § 46 (4th ed.1971). The court enunciated the doctrine of § 876 without criticism. It even illustrated the ap-

---

**3.** This case was affirmed in part and reversed in part by *Solberg v. Johnson*, 306 Or. 484, 760 P.2d 867 (1988). The Oregon Supreme Court, however, adopted § 876 of the Restatement in *Sprinkle v. Lemley*, 243 Or. 521, 414 P.2d 797 (1966).

**4.** Other, jurisdictions adopting § 876 include: *Gomez v. Hensley*, 145 Ariz. 176, 700 P.2d 874, 876–77 (App.1984); *Kilgus v. Kilgus*, 495 So.2d 1230, 1231 (Fla.App.1986); *Smith v. Thompson*, 103 Idaho 909, 655 P.2d 116 (App.1982); *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 811 P.2d 1220, 1231–34 (1991); *Stock v. Fife*, 13 Mass. App.Ct. 75, 430 N.E.2d 845, 849 (1982); *Barnes*

*v. McGough*, 623 A.2d 144, 145 (Me.1993); *Lind v. Slowinski*, 450 N.W.2d 353, 357 (Minn.App. 1990); *Sloan v. Fauque*, 239 Mont. 383, 784 P.2d 895, 896 (1989); *Blow v. Shaughnessy*, 88 N.C.App. 484, 364 S.E.2d 444, 447 (1988); *Rael v. Cadena*, 93 N.M. 684, 604 P.2d 822, 823 (App. 1979); *Herman v. Wesgate*, 94 A.D.2d 938, 464 N.Y.S.2d 315, 316 (1983); *Jefferis v. Commonwealth of Pa.*, 371 Pa.Super. 12, 537 A.2d 355, 358 (1988); *Curtin v. Lataille*, 527 A.2d 1130, 1132 (R.I.1987); *D.D.Z. v. Molerway Freight Lines, Inc.*, 880 P.2d 1, 4 (Utah App.1994).

propriate use of § 876 by referring to "automobile drag race" cases. *Id.* at 245. We cannot say, as this court's Southern District did in *Richardson v. Holland,* 741 S.W.2d 751, 754 (Mo.App.1987),[5] that the Supreme Court rejected § 876 as a recognized theory because the opposite appears to be the case. After noting the theory with apparent favor, the *Zafft* court concluded that it did not apply to the case before it because "[t]he element of agreement or cooperation necessary to application of this theory is lacking in this case." 676 S.W.2d at 245. Were the Supreme Court rejecting § 876 as a theory, it surely would have not have bothered to note the missing element. It simply would have announced that the theory was not viable in Missouri courts.

Hence, we conclude that the circuit court erred in dismissing the appellants' action. By encouraging White to speed, to ignore traffic signs, and to drive under liquor's influence—conduct which a jury could reasonably conclude was known by the passengers to be tortious—the passengers could be liable should a jury determine that those acts constituted a substantial factor in causing Karen Peppers' death and Ash's injuries. We are especially persuaded to this conclusion by the Illinois case of *Sanke v. Bechina,* 160 Ill.Dec. at 258, 576 N.E.2d at 1212. In that case, a driver lost control of a vehicle, and one of his passengers died. The plaintiffs alleged in their petition that one of the passengers encouraged the driver to speed, disregard a stop sign and used physical gestures to encourage the driver's reckless operation of the automobile. The Illinois Court of Appeals held:

> It is true that the law in Illinois is well settled concerning the duty of a passenger to control the conduct of the driver of the vehicle. Generally, a person other than the driver is not held liable for damages caused by negligent acts of the driver unless that person is the owner of the vehicle or has the right to control that vehicle.... [P]laintiffs in this case are not asserting

that [the passenger] had a duty to control [the driver] in order to prevent him from driving in a reckless manner. Instead, they assert [the passenger] himself is a contributing tort-feasor. Plaintiffs argue that [the passenger's] own action constituted a tort under section 876 of the Restatement (Second) of Torts.... Plaintiffs have alleged the necessary elements to this cause of action in their pleadings.... This case differs from an ordinary duty to control case because plaintiffs allege [the passenger] actively participated by substantially encouraging the tortious behavior.

*Id.* 160 Ill.Dec. at 259–60, 576 N.E.2d at 1213–14. The court reversed the trial court's dismissal of the plaintiff's petition and remanded the case for trial. Our case is substantially identical.

Williams, Monroe, and Barger defend on the general principal that while an automobile passenger may have a duty to exercise ordinary care for his or her own safety, he or she owes no duty to the driver or to any other person. *Gandy v. Terminal Railroad Association of St. Louis,* 623 S.W.2d 49, 51 (Mo.App.1981). In setting out this doctrine, however, the *Gandy* court said, *"Ordinarily,* a passenger in an automobile is only under a duty to exercise ordinary care for his own safety." *Id.* (emphasis added). The *Gandy* court recognized, however, that a case in which the passenger had a right to control the driver's conduct and the plaintiff's injury resulted from the exercise of that control was not an ordinary case. *Id.* Neither is a case in which the passenger encourages the driver to operate the vehicle in a manner known to the passenger to be tortious and the encouragement is a substantial factor in the plaintiff's injury.

We acknowledge some "tension" between our holding as to the supplying of beer contention and the encouragement contention. The appellants' averment that the passengers encouraged White to drive under li-

---

**5.** Even had the Richardson court not erred in concluding that Zafft rejected the concert of action theory, it recognized that the theory would not have applied to its case. *Id.* at 754. In that case, the plaintiff sued a gun manufacturer for

giving substantial assistance to the defendant by manufacturing and selling the gun used to shoot the plaintiff. The only assistance averred was the gun's manufacture and sale.

quor's influence does not offend § 537.053. According to the appellants' averment, the passengers did more than furnish White with beer; they encouraged him to drive under its influence. This is an entirely different matter and fits within the parameters of § 876(b).

The passengers wrongly rely on *Elliot*, 799 S.W.2d at 100, as supporting their contention that they could not be held liable in any case for White's actions. The issue before the *Elliot* court was whether the defendant's giving an obviously drunk person a coat hanger rendered her liable for another's death. She gave the drunk the coat hanger after he told her that he had locked his keys in his car. He later crashed his car headon into another vehicle, killing the other driver. The *Elliot* court reasoned that if she could not be liable under § 537.053 for furnishing booze to the drunk, she should not be held liable for giving him a coat hanger. This is correct, of course. We, perhaps, would have gone further to say that handing a person a coat hanger does not constitute either encouragement or *substantial* assistance to commit a tort. Opening a locked car is not a tort. Moreover, the *Elliot* court correctly noted that to hold the defendant liable for giving the man a coat hanger would potentially render liable anyone who "[helps] a person find their car keys, locate [his or her] car in a crowded lot or coming to the aid of a stranded motorist." *Id.* at 101. This would be improper because none of these instances involves *substantial* assistance to commit a tort.

Be that as it may, the appellants aver a case—not of substantial assistance—but of encouragement. According to the appellants' allegations, White's passengers urged White to drive. They urged him, knowing that he was intoxicated, to drive fast and to disobey traffic signs. This avers a cause of action under § 876(b).

Finally, the circuit court properly dismissed the appellants' third contention—that the passengers distracted White by making noise and engaging in other boisterous conduct. Here, the principal enunciated in *Gandy* applies—White's passengers had no duty to Ash and Karen Peppers beyond avoiding

providing substantial assistance or encouragement for White's negligent driving.

We remand the case to the circuit court for further proceedings on the appellants' second contention against White's passengers. The circuit court properly dismissed their other two contentions.

LOWENSTEIN, P.J., and HANNA, J., concur.