**SAFE AUTO INSURANCE COMPANY,**
**Plaintiff–Respondent**

v.

**Evan HAZELWOOD, and Jessica Hazelwood, Defendants–Appellants,**

**Terry Breidenstein, Defendant–Respondent**

**and**

**Carl Casey, Defendant.**

**Nos. SD 31928, SD 31929.**

Missouri Court of Appeals,
Southern District,
Division Two.

Feb. 7, 2013.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2013.

Application for Transfer to Supreme Court Denied April 30, 2013.

Jerry L. Reynolds, Springfield, MO, for Appellant.

Bradley R. Hansmann, St. Louis, MO, for Respondent Safe Auto.

Benjamin H. Fadler and John J. Fogarty III, Kansas City, MO, for Respondent Breidenstein.

MARY W. SHEFFIELD, J.

This is a consolidated appeal from two judgments entered against Evan and Jessica Hazelwood ("the Hazelwoods"). In SD31928, the Hazelwoods challenge the trial court's grant of summary judgment in favor of Terry Breidenstein ("Breidenstein"). In SD31929, the Hazelwoods challenge the trial court's grant of summary judgment in favor of Safe Auto Insurance Company. ("Safe Auto"). The judgments were entered in an action for interpleader and declaratory judgment that had been filed by Safe Auto after its insured, Carl Casey IV ("Casey"), collided with the Hazelwood's car. Breidenstein was a passenger in Casey's vehicle. The Hazelwoods make two arguments on appeal: (1) the trial court erred in granting summary judgment in favor of Breidenstein because there were disputed issues of material fact with respect to whether Breidenstein owed a duty to the Hazelwoods; and (2) the trial court erred in granting summary judgment in favor of Safe Auto because the policy was ambiguous and therefore should be interpreted to provide coverage for Breidenstein's alleged use of Casey's vehicle. Breidenstein filed a motion to dismiss the appeal based on the lack of a final judgment. We disagree with all of these contentions. Consequently, we deny Breidenstein's motion to dismiss the appeal and affirm the judgments of the trial court.

### Standard of Review

■ "When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* The standard of review is *de novo,* that is, "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.*

■ "The burden on a summary judgment movant is to show a right of judg-

ment flowing from facts about which there is no genuine dispute." *Id.* at 378. With respect to the Hazelwoods' claims, both Safe Auto and Breidenstein are defending parties. A defending party, or "one against whom recovery is sought[,]" *id.* at 380,

> may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence

of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense.

*Id.* at 381 (emphasis as stated in original).

### Factual and Procedural Background

 The following facts are based on the parties' statements of uncontroverted facts [1] and are viewed in the light most favorable to the Hazelwoods as the non-moving party. *Id.* at 376.

Safe Auto issued an insurance policy to Casey, effective July 24, 2009, to January 24, 2010. The policy declarations page stated that the limits of liability for bodily injury were $25,000 per person and $50,000 per accident.[2] The policy provided

---

1. Rule 74.04(c)(2) provides specific guidance regarding the preparation of a response to a motion for summary judgment. That rule states as follows:

 > The response shall set forth each statement of fact in its original paragraph number and immediately thereunder admit or deny each of movant's factual statements.
 >
 > A denial may not rest upon the mere allegations or denials of the party's pleading. Rather, the response shall support each denial with specific references to the discovery, exhibits or affidavits that demonstrate specific facts showing that there is a genuine issue for trial.
 >
 > . . . .
 >
 > A response that does not comply with this Rule 74.04(c)(2) with respect to any numbered paragraph in movant's statement is an admission of the truth of that numbered paragraph.

 All rule references are to Missouri Court Rules (2012). *See also Parish v. Novus Equities Co.*, 231 S.W.3d 236, 245 (Mo.App. E.D. 2007). "While a failure to deny does not automatically entitle summary judgment to the moving party, it does 'cause all factual assertions properly alleged and supported by the moving party to be considered as true.'" *State v. Spilton, LCSW*, 315 S.W.3d 350, 356 (Mo. banc 2010) (quoting *Johnson v. Missouri Bd. of Nursing Adm'rs*, 130 S.W.3d 619, 627 (Mo.App. W.D.2004)).

 In their response to Breidenstein's statement of uncontroverted facts, many of the Hazelwoods' responses took a form similar to

that they used in responding to paragraph 13. Their response to paragraph 13 was as follows:

> 13. [Breidenstein] did not ask [Casey] for him to take [Breidenstein] over to Steve Ross's house, but [Casey] offered to drive [Breidenstein].
>
> *RESPONSE:* DENIED. It is ADMITTED [Casey] gave the testimony cited at P. 81, L. 8–11 of his deposition but [the Hazelwoods] do not agree such testimony is credible.

That is, the Hazelwoods admitted the testimony and did not offer any contrary evidence. This failure was repeated with the allegations that Casey provided the beer the two men drank before delivering the chainsaw, that Breidenstein did not pay for gas for the trip to deliver the chainsaw, that Casey was not involved in the negotiations for the sale of the chainsaw, that Casey did not do business with the man to whom the chainsaw was sold, that Breidenstein did not give Casey any money from the sale of the chainsaw, that it was Casey's idea to go to the bar after selling the chainsaw, that Breidenstein did not spend any money at the bar, that Casey was the one who wanted Breidenstein to copy the CD, and that Casey volunteered to help look for the CD. All of these facts are thus deemed admitted and are included above based on that deemed admission.

2. Although the Hazelwoods disagree about the correct interpretation of the policy language, they agree that the language in the exhibit is the language of the policy.

coverage for damages for bodily injury and property damage "for which an **insured person** becomes legally responsible because of an **accident** arising out of the: 1. ownership, maintenance, or use of a vehicle[.]"

On November 28, 2009, Casey was involved in a motor vehicle accident. On the night of November 27, 2009, Casey spent the night at Breidenstein's home after a barbeque. The next day, Breidenstein was going to sell a chainsaw, and Casey offered to drive him to the location of the sale because Breidenstein did not have a job at the time. Breidenstein and Casey each had a beer before they went to sell the chainsaw. Casey did not receive any money from the sale of the chainsaw, and Breidenstein did not give Casey money for transporting him to the location of the sale. After selling the chainsaw, they went to a bar to play pool. At the bar, Casey bought one or two pitchers of beer. Breidenstein did not buy any beer. Casey drank two or three glasses of beer. They played two or three games of pool and stayed at the bar for about an hour.

When they left the bar, Casey drove. They traveled south on Missouri Highway 39. Casey set the cruise control on 55 miles per hour. As they traveled, Casey decided he wanted Breidenstein to copy one of his CDs. Casey looked down to help Breidenstein look for the CD. Casey had his eyes off the road for no more than five seconds. When he looked up, he saw headlights and knew he was over the centerline. Casey tried to swerve back to the right, but his car crashed into the oncoming vehicle. At no time during the day did Breidenstein offer to drive the car, and at no time during the day did Casey ask Breidenstein to drive the car.

Evan Hazelwood was driving the car into which Casey crashed. Evan Hazel-wood's wife, Jessica Hazelwood, was his passenger. Both sustained injuries.

Safe Auto filed a petition for interpleader and declaratory judgment, listing Casey, Breidenstein, and the Hazelwoods as defendants. Safe Auto paid $50,000 into the court registry. The Hazelwoods filed cross-claims against Casey and Breidenstein. Breidenstein filed a cross-claim against Evan Hazelwood. The $50,000 was distributed to Breidenstein and the Hazelwoods pursuant to a settlement agreement. After much procedural maneuvering, the Hazelwoods filed a second amended cross-claim against Breidenstein and Casey. They alleged alternatively that Casey was operating the vehicle as part of his employment for Breidenstein, that Breidenstein was independently negligent for distracting Casey, and that Casey and Breidenstein acted in concert and were involved in a joint enterprise. Safe Auto then filed a motion for summary judgment arguing (1) Breidenstein was not an insured under the policy because he was not using the vehicle and (2) the policy limit of $50,000 applied regardless of the number of insureds involved in the accident. Breidenstein filed a motion for summary judgment arguing (1) no agency relationship existed between Breidenstein and Casey and (2) there was no basis for holding him independently liable because he was a passenger in the vehicle.

The trial court granted both motions for summary judgment. With respect to Breidenstein's motion, the trial court found Breidenstein was a passenger in the vehicle, was not employing Casey at the time of the accident, did not drive, did not share expenses, and did not direct Casey's driving. The trial court ruled there was no legal basis for finding Breidenstein liable for the Hazelwoods' injuries. With respect to the motion filed by Safe Auto, the trial court found that the policy did not provide the additional coverage claimed by the Ha-

zelwoods because: (1) "Breidenstein was not exercising any supervisory control over the subject vehicle at the time of the accident"; and (2) "the [p]olicy unambiguously states that its liability limits of $25,000 per person and $50,000 per accident are the most Safe Auto will pay regardless of the number of insured persons." Finally, the trial court also found Safe Auto had no further duty to defend because the policy proceeds had been paid into court and distributed pursuant to the parties' stipulation and court order. The Hazelwoods' cross-claims against Casey and Breidenstein's cross-claims against the Hazelwoods remain pending in the trial court. Pursuant to Rule 74.01(b), the trial court stated that there was no just reason for delay with respect to either judgment. The Hazelwoods appeal.

## Discussion

### The Judgment in Favor of Breidenstein Was Properly Certified as Final

To begin, we must address Breidenstein's motion to dismiss the appeal because the resolution of that issue impacts our authority to hear the appeal. While the appeal was pending, Breidenstein filed a motion to dismiss the appeal arguing the judgment in his favor was not a final judgment. We disagree.

■ "A prerequisite to appellate review is that there be a final judgment." *Gibson v. Brewer*, 952 S.W.2d 239, 244 (Mo. banc 1997). "An appealable judgment resolves all issues in a case, leaving nothing for future determination." *Id.* Rule 74.01(b) creates an exception to this rule in cases involving multiple parties or multiple claims. *Kinney v. Schneider Nat'l Carriers, Inc.*, 213 S.W.3d 179, 182 (Mo.App. W.D.2007). In such cases, "[a] trial court may enter judgment on less than all claims and certify that there is 'no just reason for delay.'" *Gibson*, 952 S.W.2d at 244 (quoting Rule 74.01(b)).

■ A designation of finality under Rule 74.01(b) "is effective only when the order disposes of a distinct 'judicial unit.'" *Gibson*, 952 S.W.2d at 244. "An order dismissing some of several alternative counts, each stating only one legal theory to recover damages for the same wrong, is not considered an appealable judgment while the other counts remain pending because the counts are concerned with a single fact situation." *Id.* (quoting *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 600 (1953)). On the other hand, where a judgment disposes of all counts against a particular defendant, that judgment may properly be certified as final for appeal. *Gibson*, 952 S.W.2d at 244; *see also Kinney*, 213 S.W.3d at 182 ("A judgment that dismisses one of two defendants on the basis of a defense available to only the dismissed defendant constitutes a 'distinct judicial unit' reviewable on appeal").

■ In the present case, the judgment against Breidenstein resolved all the claims against him. It addressed each of the Hazelwoods' theories of liability and rejected all of them, stating that "the uncontroverted material facts and the pleadings do not support a legal basis for a finding of liability of [Breidenstein] for the injuries sustained by [the Hazelwoods] as a result of the vehicle accident which is the subject of this litigation." The trial court also certified the judgment for appeal, stating that there was no just reason for delay. Under these circumstances, the certification was proper, and we have the authority to address the merits of the appeal. *See Gibson*, 952 S.W.2d at 245. Breidenstein's motion to dismiss is denied.

### The Hazelwoods Will Not Be Able to Present Evidence that Breidenstein Owed Them a Duty of Care

■ In their first point, the Hazelwoods argue summary judgment was inappropri-

ate because there is a genuine issue of fact with respect to whether Breidenstein owed them a duty of care. They suggest Breidenstein had a duty: (1) based on direct negligence because Breidenstein interfered with Casey's driving when they were looking for the CD; (2) based on agency because the initial purpose of the trip was to sell his chainsaw and Breidenstein gave Casey directions on how to get to the location where they would sell the chainsaw; and (3) based on a theory of concerted action because he encouraged Casey to drink and drive.[3] We disagree with each of these contentions.

■ The uncontradicted facts show that Breidenstein owed no duty of care directly to the Hazelwoods. Generally speaking, "[a] guest passenger in an automobile is required to exercise ordinary care *for his own safety.*" *Choate v. Natvig*, 952 S.W.2d 730, 734 (Mo.App. S.D.1997) (emphasis added). Here, the alleged duty runs not to an injured passenger but to third parties. Thus, a theory of direct negligence has no application to the present case.

In support of their argument that Breidenstein was directly negligent, the Hazelwoods make an analogy to the facts in *Choate.* Even if *Choate* involved a duty to a third party, as opposed to a duty to the passenger herself, an analogy to that case would not be appropriate because the facts in *Choate* were different from the facts in the present case. In *Choate*, the jury could have inferred the passenger asked the driver to assist her, thereby actively interfering with his driving. *Id.* Here, in contrast, the uncontroverted evidence showed Casey volunteered to help look for the CD. Nothing Breidenstein did amount-

ed to affirmative interference with Casey's driving, so relief on a theory of direct negligence is not appropriate.

■ The Hazelwoods' second theory of liability, *i.e.,* that Breidenstein was liable to them based on agency, is also without basis in the facts. "As a general rule, the negligence of a driver of an automobile will not be imputed to a mere guest or passenger who has no control or authority over the automobile or over the driver." *Mitchem v. Gabbert*, 31 S.W.3d 538, 542 (Mo.App. S.D.2000). "In order for a passenger to be found to be engaged in a joint enterprise involving use of an automobile, the passenger must be found to have an equal right to be heard in the manner in which it is driven." *Id.* Thus, passenger liability may be found where the parties share expenses and are driving on a long trip for a common purpose, *Manley v. Horton*, 414 S.W.2d 254, 260 (Mo.1967), or where the passenger actually controls the method of driving, as in the case of a student driver, *see Frye v. Baskin*, 241 Mo.App. 319, 231 S.W.2d 630, 636 (1950). Such liability will not be found where the driver is merely doing a favor for the passenger, *Dilallo v. Lynch*, 340 Mo. 82, 101 S.W.2d 7, 13–14 (1936), or where the passenger is merely giving suggestions about the route, *see Gandy v. Terminal R.R. Ass'n of St. Louis*, 623 S.W.2d 49, 51 (Mo.App. E.D.1981).

In the present case, the undisputed facts show Breidenstein did not exercise any control over how the vehicle was operated, and there was no community of financial interest in the trip. Casey did not ask Breidenstein to drive that day, and Breidenstein did not offer to drive. Further-

---

**3.** Both Breidenstein and Safe Auto argue Point I preserves nothing for review because it is multifarious. Since we are able to discern the nature of the complaint, we exercise our discretion to review the point on the merits. *See Dixon v. Thompson*, 235 S.W.3d 568, 571 (Mo.App. S.D.2007).

more, Breidenstein did not pay Casey for his services or for gas, and Casey received no money from the sale of the chainsaw. Casey was not acting as an agent for Breidenstein.

In support of their argument to the contrary, the Hazelwoods point to testimony that Breidenstein and Casey planned for Casey to drive Breidenstein home, that Breidenstein was older than Casey, and that Casey's father thought Breidenstein may have had some influence over Casey in general. These facts are not sufficient to create passenger liability. Casey driving Breidenstein home was simply in the nature of a personal favor and raises no issue of passenger liability. *See Dilallo,* 101 S.W.2d at 13–14. None of the additional facts are relevant to the determination because they do not show influence over how the vehicle was operated. The uncontroverted facts demonstrate Breidenstein did not owe a duty to the Hazelwoods under a theory of agency.

 Finally, the Hazelwoods are not able to adduce evidence supporting their theory of concerted action. In Missouri, a person could be liable to a third party for negligence committed by another under a theory of concerted action if he:

 (a) does a tortious act in concert with the other or pursuant to a common design with him, or

 (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

 (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third tortious result and person.

*Shelter Mut. Ins. Co. v. White,* 930 S.W.2d 1, 3 (Mo.App. W.D.1996) (quoting Restatement (Second) of Torts § 876 (1979)). This rule was applied in White, a case where the court was presented with a factual scenario involving passengers who provided alcohol to the driver, encouraged the driver to drive while intoxicated, and encouraged the driver to employ excessive speeds and to ignore traffic signals. White, 930 S.W.2d at 2. The court found that the passengers could be liable based on their acts of encouragement but not based on their act of supplying alcohol. *Id.* at 2–3.

In the present case, there was no act of encouragement comparable to encouragement to speed and ignore traffic signals given in *White.* There was no testimony Breidenstein told Casey how to operate the vehicle, let alone encouraged him to speed or engage in other reckless behavior. In fact, the uncontroverted evidence showed the cruise control was set at 55 miles per hour, and Casey volunteered to help find the CD.

The Hazelwoods suggest Breidenstein was liable under this theory because he provided alcohol to Casey and encouraged Casey to drive while drunk. However, that suggestion is contrary to the uncontroverted facts. The uncontroverted facts show Breidenstein did not. The Hazelwoods' denial of those facts as not credible without citation to affidavit or exhibit is not sufficient to create a triable issue of fact. *See* Rule 74.04(c)(2).

In sum, there is no legal basis for holding Breidenstein liable to the Hazelwoods. Breidenstein did not owe the Hazelwoods a duty under a theory of direct negligence because the uncontroverted facts demonstrate Breidenstein was a passenger who did not directly interfere with the driver's operation of the vehicle. Furthermore, Breidenstein was not liable under a theory of agency because the uncontroverted facts show Breidenstein did not have an actual

right to control the manner in which the vehicle was operated. Finally, the Hazelwoods will not be able to present evidence to support their theory of concerted action because the uncontroverted facts demonstrate Breidenstein did not encourage Casey to commit reckless acts in the operation of the vehicle. The Hazelwoods' first point is denied.

### The Issue of Whether the Policy Limits Were Ambiguous Is Moot

In their second point, the Hazelwoods attempt to create an ambiguity in the policy to thwart the coverage limits by reading the other insurance clause in conjunction with the bodily injury portion of the policy. Their argument proceeds in the following manner: (1) the term "use" is not defined in the policy; (2) the ordinary meaning of the term "use" dictates a determination that Breidenstein was using the car at the time of the accident; (3) the other insurance clause contains a reference to coverage provided for other users of the vehicle; therefore (4) the policy is ambiguous as to whether it provided additional coverage for Breidenstein's use of the vehicle and must be construed in favor of additional coverage. We need not reach this issue because our disposition of Point I renders this issue moot.

 A person seeking coverage under an insurance policy has the burden of bringing him or herself within the terms of the policy. See Trans World Airlines, Inc. v. Associated Aviation Underwriters, 58 S.W.3d 609, 618–19 (Mo.App. E.D.2001). When a court determines that the omnibus provision of a policy provides no coverage, additional issues regarding the interpretation of other portions of the policy become moot. For example, in Trow v. Worley, 40 S.W.3d 417, 421 (Mo.App. S.D.2001), we determined that there was no coverage under the omnibus clause of an automobile policy because the driver at the time of the accident had been driving the car without permission. Because there was no coverage under the omnibus clause, we held the issue of the validity of an exclusion was moot. Id. Similarly, in Stone v. Farm Bureau Town & Country Ins. Co. of Missouri, 203 S.W.3d 736, 748–49 (Mo.App. S.D.2006), this Court determined issues regarding alternative theories of liability in an action against an insurer alleging failure to defend were rendered moot after we determined the policy provided no coverage because it had been cancelled prior to the date of the accident.

A comparison of the policy language with our discussion above demonstrates the omnibus clause in the policy at issue provided no coverage for Breidenstein under the circumstances of this case. The omnibus clause of Casey's policy provided coverage for damages for bodily injury and property damage "for which an **insured person** becomes legally responsible[.]" (Bolding as in original.) As we determined above in Point I, there is no legal theory under which Breidenstein could be held responsible for the damages sustained by the Hazelwoods. Consequently, even if we were to determine Breidenstein was an insured, the policy provided no coverage under these circumstances. The issues raised in the Hazelwoods' second point are moot. See Stone, 203 S.W.3d at 748–49; Trow, 40 S.W.3d at 421.

The Hazelwoods' second point is denied.

### Decision

Breidenstein's motion to dismiss the appeal is denied. The decisions of the trial court are affirmed.

JEFFREY W. BATES, J., and DANIEL E. SCOTT, P.J., concur.