**Jimmy INGRAM and Trina Ingram, Respondents,**

v.

**SHELTER MUTUAL INSURANCE COMPANY, Appellant.**

No. 20252.

Missouri Court of Appeals, Southern District, Division Two.

April 19, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 10, 1996.

Application to Transfer Denied June 25, 1996.

Terry R. Ottinger, Blanton, Rice, Sidwell & Ottinger, Sikeston, for appellant.

Jeffrey S. Maguire, Thomasson, Gilbert, Cook, Remley & Maguire, L.C., Cape Girardeau, for respondents.

PARRISH, Judge.

Shelter Mutual Insurance Co. (Shelter) appeals a summary judgment holding an endorsement in an automobile insurance policy invalid. The endorsement declared that the policy provided no insurance "while any automobile is being driven by or is under the direct control of: Ronald Harmon." The trial court held the endorsement violated public policy established by Missouri's Motor Vehicle Financial Responsibility Law, chapter 303, RSMo 1986. This court affirms.

The named insureds in the automobile insurance policy are Jimmie Harmon and Evelyn Marie Harmon. The policy was in effect December 15, 1991, when the insureds' automobile collided with an automobile driven by Jimmy Ingram. Trina Ingram was a passenger in the Ingram vehicle. At the time of the accident, Ronald Harmon was driving the Harmon vehicle. He had permission from his mother, Evelyn Marie Harmon, to drive the vehicle.

Jimmy Ingram and Trina Ingram brought an action in the Circuit Court of Butler County, Missouri, against Ronald Harmon alleging they sustained injuries in the automobile accident due to his negligence. Judgment was rendered January 12, 1994, in favor of the Ingrams. Jimmy Ingram was awarded damages for personal injuries in the amount of $16,000. Trina Ingram was awarded damages for personal injuries in the amount of $17,000. The two of them were awarded property damages in the amount of $5,050.

Shelter denied coverage for the losses sustained by the Ingrams on the grounds that the terms of its insurance policy excluded coverage if an automobile was driven by Ronald Harmon. The Ingrams filed this action April 19, 1994, pursuant to § 379.200, RSMo Supp.1991. It provides, as is pertinent to this appeal:

> Upon the recovery of a final judgment against any person, ... for loss or damage on account of bodily injury ... or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company ... and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.... [1]

Shelter alleges one point of error. It contends the trial court erred in holding it liable

---

1. The fact that the Ingrams did not include Ronald Harmon as a defendant in the action brought under § 379.200, RSMo Supp.1991, is not an issue in this appeal. However, *see Mazdra v. Selective Insurance Co.*, 398 S.W.2d 841, 845–46 (Mo.1966).

to the Ingrams "because the driver exclusion endorsement in the automobile liability policy denied coverage to Ronald Harmon in that an unambiguous insurance policy should be enforced as written unless it is against public policy." Shelter argues that the endorsement denying insurance coverage to any automobile operated by Ronald Harmon is not against public policy.

Section 303.025.1 and .2 [2] provide:

1. No owner of a motor vehicle registered in this state shall operate the vehicle, or authorize any other person to operate the vehicle, unless the owner maintains the financial responsibility as required in this section. Furthermore, no person shall operate a motor vehicle owned by another with the knowledge that the owner has not maintained financial responsibility unless such person has financial responsibility which covers his operation of the other's vehicle.

2. A motor vehicle owner shall maintain his financial responsibility in a manner provided for in section 303.160, or with a motor vehicle liability policy which conforms to the requirements of the laws of this state.

These provisions of § 303.025 were part of a 1986 amendment to chapter 303. The purpose of the amendment was explained in *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479 (Mo. banc 1992).

The plain purpose of the 1986 amendment is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators. This protection extends to occupants of the insured vehicle as well as to operators and occupants of other vehicles and pedestrians.

*Id.* at 482. *Halpin* added, "We believe that the legislature had a purpose of requiring motor vehicle liability policies to provide cov-

erage coextensive with liability, subject to the statutory limits." *Id.*

*Halpin* declared that exclusions in automobile liability policies that denied coverage to members of the insureds' household, "household exclusion clauses", were contrary to the public policy embodied in the 1986 amendment to chapter 303. The court held that household exclusion clauses would not be enforced insofar as they purported to deny coverage in the amounts required by Missouri law. Section 303.190.2 requires motor vehicle liability policies to provide $25,000 coverage for injury to one person, $50,000 coverage for injuries to two or more persons in one accident and $10,000 coverage for property damage.

Shelter argues that the endorsement in the policy of insurance it issued to Jimmie Harmon and Evelyn Marie Harmon stated clearly and unambiguously that it provided no insurance when Ronald Harmon drove the vehicle otherwise covered by the policy. Shelter contends that because Jimmie Harmon and Evelyn Marie Harmon could fulfill the statutory requirements for a motor vehicle liability policy by having more than one policy of insurance, the endorsement in this policy did not violate Missouri public policy. *See* § 303.190.10.[3] Shelter relies on *Dairyland Ins. Co. v. Morse*, 771 F.Supp. 297 (E.D.Mo.1991).

The issue in *Dairyland* was whether a policy that excluded liability coverage to a motorcycle passenger violated Missouri public policy. The carrier made an option to purchase passenger liability coverage available to its policyholders. Morse had not purchased the optional coverage. The district court in *Dairyland* concluded, based on the fact that § 303.190.10 permitted policies from more than one carrier to be used to meet mandatory coverage requirements, that failure to have such coverage did not violate Missouri's public policy.

**2.** References to statutes are to RSMo 1986 unless stated otherwise.

**3.** § 303.190.10 states, "The requirements of a motor vehicle liability policy may be fulfilled by

the policies of one or more insurance carriers which policies together meet such requirements."

That court reasoned, "The effect of Mo. Rev.Stat. § 303.190.10 is to place the burden of liability for deficient coverage on the motorist, not the insurer." *Id.* at 300. It concluded, "Even if the Financial Responsibility Law mandates coverage for motorcycle passengers, Dairyland cannot be held liable for Mr. Morse's failure to procure passenger coverage because the necessary coverage could have been purchased elsewhere." *Id.*

*Dairyland,* being a decision from a U.S. District Court, provides no precedent that is binding on this court. Further, since it was decided before the Supreme Court of Missouri decided *Halpin,* it is questionable that the result in *Dairyland* would be the same if the question were presented again.

*Halpin* declared the purpose of the 1986 legislation was to require motor vehicle liability policies to provide coverage coextensive with liability. Shelter would defeat that purpose if it were permitted to identify, by policy endorsement, persons who, when operating a covered vehicle, would not be afforded liability coverage. Enforcement of the endorsement would violate Missouri's policy of assuring that people who are injured on the highways may collect damage awards, within statutory limits, against negligent vehicle operators.

The parties submitted stipulated facts to the trial court. There is no indication in the stipulated facts, nor any allegation in the pleadings, that Shelter's insureds had other liability coverage. This court need not, and does not, address the query of whether the endorsement would have been enforceable had there been another policy of motor vehicle liability insurance that covered the damages caused by Ronald Harmon's negligent acts. The judgment is affirmed.

SHRUM, C.J., and CROW, J., concur.