**Molly TROW, Plaintiff–Appellant,**

v.

**Steven W. WORLEY, Pauline Worley, and Steven Worley, Jr., Defendants–Respondents.**

No. 23687.

Missouri Court of Appeals, Southern District, Division One.

March 30, 2001.

---

Mark E. Parrish, Totta & Parrish P.C., Independence, for Appellant.

John D. Hammons, Jr., and Nicholas E. Mebruer, Ellis, Ellis, Hammons & Johnson, P.C., Springfield, for Respondents.

SHRUM, Judge.

Molly Trow ("Plaintiff") seeks damages from Defendants for personal injuries sustained in an auto accident.[1] Her theory is that Defendants negligently entrusted an automobile to Charles Worley ("Charles"). In an earlier and separate declaratory judgment suit over insurance coverage, the Greene County circuit court found Charles was driving the subject vehicle *without* Defendants' implied or expressed consent. Based on the Greene County court's ruling

1. In this opinion, when referring to defendants individually we call them "Steven," "Pauline," and "Steven, Jr." Collectively, we call them "Defendants."

2. The "Named Driver Exclusion Endorsement" to the policy provided: "This policy

of the permission issue, the trial court here entered summary judgment against Plaintiff on her negligent entrustment case. Plaintiff appeals.

The dispositive question presented, albeit in two separate points relied on, is whether the Greene County court's finding that Charles drove the subject vehicle without Defendants' permission precludes Plaintiff from now asserting Defendants entrusted Charles with the automobile. We answer, "Yes." We affirm.

### FACTS

On March 15, 1995, Plaintiff sustained injuries when a vehicle she was driving collided with a 1988 Ford Escort driven by Charles, who was killed in the accident. Three of his four passengers were Charles' siblings and they sustained severe injuries.

Steven W. Worley ("Steven"), Charles' father, owned the 1988 Escort. On the accident date, the Escort was one of four motor vehicles Steven and his wife ("Pauline") had insured with American Family Insurance Company ("AFI"). Besides liability coverage, the policy provided $50,000 of per person uninsured motorist coverage on each of the four vehicles insured.

Originally, AFI asserted the position its liability coverage on the Escort did not apply because Charles was an excluded driver under an endorsement to its insurance contract.[2] Based on this analysis, AFI made payments under its uninsured coverage to Steven Travis Worley ("Steven, Jr."), and Jerry Worley, passengers in the Escort who sustained injuries.

does not apply under any of the coverage to any vehicle in the care, custody or control of, or while operated by WORLEY, ALLEN CHARLES or any other person with his or her permission or at his or her direction."

Later, AFI altered its position by notifying all affected parties, including Plaintiff, that liability coverage rather than uninsured motorist coverage would apply.[3] Ultimately, AFI included this assertion in a declaratory judgment suit filed in the circuit court of Greene County, Missouri (herein called the "AFI case"). All individuals with unresolved claims arising out of this accident, including Plaintiff, were joined in that suit, along with their auto liability insurers. Among its other requests, AFI prayed for a declaration of the rights of various parties, including "the question of the status of Charles ... as a driver under the policy of insurance issued to Steven ... and Pauline...."

Once AFI's declaratory judgment suit was at issue, several parties moved for summary judgment.[4] In a motion by Steven and Pauline and their daughter Tina, they asked the AFI court to declare that "(1) Charles ... was operating the [1988 Escort] without the permission of any person, (2)[t]hat AFI's policy denies liability coverage to any person operating a vehicle without the permission of the person having lawful possession; [and] (3) that Charles ... was not covered by AFI's policy of liability coverage." Steven, Pauline, and Tina supported their allegations that Charles was driving the Escort without permission by attaching the deposition testimony and internal "memo to file" of Ernie Collette, claims adjuster for AFI. In the "memo," Collette wrote:

"Two very interesting points that we could bring up to go along with the excluded driver is the fact that 1. according to our insured, it appears that he did not give permission to Charles to drive the vehicle and Charles was explicitly told not to driver [sic] the vehicle, therefore, being a non-permissive driver. 2., it appears that Charles was using excessive force or threatened the previous driver, Steven [,Jr.], that if he did not let him drive that he would cause physical harm. This would show that it was a strong arm tactic, therefore, again, we could deny based on this type of situation."

Collette's deposition testimony confirmed what he had recorded in his memo regarding Charles' nonpermissive driving of the Escort.

On July 13, 1999, the Greene County circuit court entered a summary judgment which adjudged, *inter alia,* Charles was an uninsured motorist under AFI's policy. Factual findings undergirding this decision include the following:

"FINDS that ... Charles ... was driving the 1988 Ford Escort without the express or implied permission of Steven ..., Pauline ..., Steven [,Jr.] or anyone."

"FINDS that the Named Driver Exclusion of the Policy denies liability coverage to any vehicle operated by Charles...."

"FINDS that the Policy denies liability coverage to any person operating a vehicle without the permission from the person having lawful possession."

"FINDS that at the time of the ... collision, no automobile liability insurance policies were in effect providing

---

**3.** AFI cited *Ingram v. Shelter Mut. Ins. Co.,* 922 S.W.2d 854 (Mo.App.1996) as the reason for its change of position. AFI apparently decided the *Ingram* analysis rendered its exclusion of Charles as an insured driver void as a matter of public policy.

**4.** Molly Trow and her insurer, Windsor Group, Inc., were parties to the AFI case. As part of its judgment, the AFI court denied Windsor's motion for summary judgment against AFI, and also denied Windsor's motion for summary judgment with respect to its cross-claim against Molly.

liability coverage to Charles ... because he was not an 'insured person' under [AFI's] policy."

During the pendency of AFI's declaratory judgment suit, Plaintiff sued Steven, Pauline, and Steven, Jr. ("Defendants") in Dallas County, Missouri, on the theory that Defendants had negligently entrusted the Ford Escort to Charles. This case was decided adversely to Plaintiff when Defendants' motion for summary judgment was sustained on April 19, 2000. The trial court ruled that "[p]ursuant to the Doctrine of Collateral Estoppel, Plaintiff is precluded from re-litigating the issue found in the Judgment by the Circuit Court of Greene County ... finding that Charles ... did not have express or implied permission to operate Defendants' vehicle. Therefore, Defendants did not entrust their vehicle to Charles." Plaintiff's appeal to this court followed.

## DISCUSSION AND DECISION

"The doctrine of collateral estoppel, commonly known as issue preclusion, precludes the same parties from relitigating issues previously adjudicated between ... [them] or those in privity with them." *Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 185[3] (Mo.App.1999). Stated otherwise, "[c]ollateral estoppel is a theory meaning that when an issue of ultimate fact has been determined by a valid judgment, it may not again be litigated between the same parties." *Missouri Bd. of Pharmacy v. Tadrus*, 926 S.W.2d 132, 136[4] (Mo.App.1996).

*PLAINTIFF'S POINT I "ULTIMATE FACT" ARGUMENT*

Under Point I, Plaintiff first argues reversible error occurred when the summary judgment was entered on collateral estoppel grounds because permission was not an

ultimate issue of fact in the AFI case. Plaintiff insists "the key issue before the [AFI] court was the validity of the insurance policy's Named Driver Exclusion." To support her argument, Plaintiff cites *Abeles v. Wurdack*, 285 S.W.2d 544 (Mo. 1955), for the proposition that ultimate facts are those which are "essential to that decision and which were decided in support of the judgment." *Id.* at 548[7]. Continuing, Plaintiff argues:

"In [AFI], the court's task was to decide whether the Named Driver Exclusion ... in ... the [AFI] ... policy, which purported to exclude coverage for Charles ..., was enforceable. Irrespective of how 'permission' was defined in the insurance policy, the named driver exclusion was sufficient in and of itself to support the Greene County Court's ruling that Charles ... was an uninsured motorist. The Court's finding on 'permission' was not necessary, and thus, not essential, in order for the Court to enter its judgment. Thus, any ruling regarding 'permission' cannot be an ultimate issue in [Plaintiff's] case."

We disagree with Plaintiff when she asserts the AFI court's task was to decide the validity of the exclusionary clause, and the ruling regarding "permission" was not an ultimate issue in the case. To explain why Plaintiff is mistaken, we pause briefly to discuss the two clauses implicated when the AFI court made its analysis.

Missouri's public policy, as evidenced by the Motor Vehicle Financial Responsibility Law (MVFRL), "is to make sure that people who are injured on the highways may collect damage awards, within limits, against negligent motor vehicle operators." *Halpin v. American Family Mut. Ins. Co.*, 823 S.W.2d 479, 482[4] (Mo.banc 1992).[5]

---

5. *Halpin* held that, to the extent that house-

hold exclusion clauses purport to exclude the

To implement that policy, § 303.190.2(2), RSMo 1994, requires the inclusion of omnibus clauses in auto liability policies, that is, the "statute requires every auto liability policy issued to comply with that law to protect not only the named insured but 'any other person ... using any such motor vehicle ... with the *express or implied permission* of such named insured.'" *State Farm Mut. Auto. Ins. Co. v. Liberty Mut. Ins. Co.,* 883 S.W.2d 530, 532–33 (Mo.App.1994) (emphasis supplied). On the other hand, the purpose of an exclusionary clause is to limit the coverage otherwise provided under the omnibus clause of the policy. *Distler v. Reuther Jeep Eagle,* 14 S.W.3d 179, 181 (Mo.App.2000).

Here, Charles was not a "named insured" under the AFI policy; consequently, his coverage, if any, had to be found in the omnibus clause. Therefore, the court's initial focus *had* to be on the omnibus clause. If the omnibus clause did not extend coverage to Charles, any question regarding the validity of the exclusionary clause became moot. To decide whether Charles was insured under the omnibus clause meant the AFI court had to decide if Charles had permission to drive the Escort. Thus, contrary to what Plaintiff argues, the omnibus clause of the policy and whether Charles had permission to drive were the initial focal points, not the exclusionary clause.

■ The AFI court found AFI's policy did not extend coverage "to any person operating a vehicle without the permission of the person having lawful possession." This was an obvious reference to the omnibus clause of the subject policy. An omnibus clause which does not extend coverage to a nonpermissive driver is not invalid as against public policy. *State Farm Fire & Cas. Co. v. Ricks,* 902 S.W.2d 323, 325[4] (Mo.App.1995). To the contrary, " § 303.190.2(2) requires coverage *only* for persons using the vehicle with the express or implied permission of the insured." *Id.* at 325 (emphasis supplied).

The finding by the AFI court that Charles was driving without permission meant the omnibus clause did not extend coverage to Charles; consequently, the validity or invalidity of the exclusionary question became a moot issue. Under the circumstances, resolution of the permission issue by the AFI court was "essential to [the] decision" that Charles was uninsured; therefore, permission was an "ultimate issue of fact" per the *Abeles* definition. 285 S.W.2d at 548[7]. We disagree with Plaintiff when she asserts otherwise. We deny this part of Plaintiff's first point.

## PLAINTIFF'S POINT I "IDENTITY OF ISSUE" ARGUMENT

■ Before a court can properly apply the collateral estoppel doctrine, it must be shown, *inter alia,* "the issue presented in the prior adjudication was identical with the issue presented in the present action." *Atlanta Cas. Co. v. Stephens,* 825 S.W.2d 330, 334[9] (Mo.App.1992). In another part of Plaintiff's first point, she asserts the "identical issue" factor did not exist here. Specifically, she argues the issue of permission in the AFI case was not "identical" to the issue of entrustment in her tort action.[6] Plaintiff insists, therefore,

minimum liability insurance coverage mandated by § 303.190, they are invalid. 823 S.W.2d at 482–83. *Ingram* applied the *Halpin* analysis to conclude that named driver exclusions that purport to exclude the minimum liability coverage required by § 303.190 are invalid. 922 S.W.2d at 856–57. The *In-*gram court was not, however, faced with the initial issue of a nonpermissive driver as was the AFI court.

6. Presumably, Plaintiff argues this because the two *causes of action* are not the same; therefore, the issues could not be "identical."

the trial court erred when it applied the collateral estoppel doctrine to dismiss her negligent entrustment suit.

Plaintiff attempts to develop this claim of trial court error with arguments such as these:

> "Each and every one of [the] issues [in the AFI case] involves the question of insurance coverage and not entrustment. Negligent entrustment was in no way at issue in that case. The question of 'permission' decided by Greene County Circuit Court in [*AFI* ] applied only to permission as it related to an automobile insurance policy, not a tort action for negligent entrustment."

> . . . .

> "Molly Trow, however, raises an issue distinctly separate from that central to [AFI's] Declaratory Judgment Action (the tort of negligent entrustment vs. a question of insurance coverage)."

> . . . .

> "Plaintiff Trow is not litigating whether her injuries are covered under [AFI's] automobile policy, but whether Respondents' actions constituted negligence entrustment."

■ Contrary to what Plaintiff argues, collateral estoppel principles *were not* inappositive because the AFI court's finding of nonpermissive driving came in a suit over insurance coverage, whereas Plaintiff's suit sought damages via the tort theory of negligent entrustment. Such argument fails because it confuses "issue preclusion" (collateral estoppel) with "claim preclusion" (res judicata). "The principle of issue preclusion applies with equal force whether the second action is on the same or a different claim." *Consumers Oil Co. v. Spiking,* 717 S.W.2d 245, 249[5] (Mo.App.1986). *See also Schmitt v. Pierce,* 379 S.W.2d 548, 550[1] (Mo.1964). "A judgment between the same parties on a different cause of action is binding as to

the facts actually decided, and necessarily determined in rendering the judgment." *Abeles,* 285 S.W.2d at 546[2]. Based on the teachings of *Spiking* and *Abeles,* we reject this prong of Plaintiff's first point.

## POINT I CLAIM THAT THE PRIOR ADJUDICATION WAS AMBIGUOUS

■ Before the collateral estoppel doctrine is triggered, the record must show the issue claimed to be identical when presented in the second case was *"unambiguously decided"* in the first case. *Shores v. Express Lending Services, Inc.,* 998 S.W.2d 122, 126[7] (Mo.App.1999) (emphasis supplied).

As yet another part of Point I, Plaintiff insists ambiguity did exist in the AFI court's judgment; consequently, collateral estoppel was not warranted, and the trial court erred in applying the doctrine. Plaintiff supports her claim of ambiguity by relying heavily on *Herrera v. Reicher,* 608 S.W.2d 539 (Mo.App.1980). There, permissive driving had been an issue in an earlier case in which a judgment had been rendered. In a second case, the trial court held collateral estoppel principles precluded relitigation of the permissive driving issue. We reversed, holding collateral estoppel could not be invoked because permissive driving had been only one of seven propositions hypothesized in a verdict director given the jury in the first case. Since the general verdict favorable to the father in the earlier case did not reveal which of the elements the jury failed to believe, it was impossible to know why the jury found for the father. Since other hypothesized facts in the instruction could have been the basis for the jury's verdict, the resultant judgment was ambiguous as to the "permission" issue. *Id.* at 542–43.

Plaintiff asserts the circumstances here are akin to the situation in *Herrera,* in that

the AFI court did not disclose by its decision whether it found Charles uninsured based on the "named exclusion" provision or the omnibus clause. Continuing, Plaintiff insists that because the judgment did not reveal which finding was determinative, an ambiguity existed which rendered the collateral estoppel doctrine inapplicable.

To recount Plaintiff's argument is to reveal its fallacy and the inapplicability of *Herrera*. As explained earlier, whether Charles had permission to drive *was* the ultimate fact issue which drove the AFI decision. Thus, if Charles did not have permission to drive the Escort, the omnibus clause did not extend coverage to him and that was the end of the analysis. We explained why this is so earlier in the opinion. Further explanation is not required. Under the circumstances, the judgment in the AFI case was not ambiguous. Point I is denied.

*POINT II: DID "NONPERMISSION" RULING NEGATE NEGLIGENT ENTRUSTMENT?*

■ When Defendants moved for summary judgment, it was not necessary to controvert *each* element of Plaintiff's negligence entrustment claim in order to establish their right to summary judgment.[7] This is explained in *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371 (Mo.banc 1993):

> "[A] 'defending party' may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's element facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will

not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements...."

*Id.* at 381[16].

Here, the summary judgment for Defendants was based on the court's finding that Defendants negated the third element of Plaintiff's negligent entrustment claim (as listed in *Evans*, 555 S.W.2d at 326). *See* n.6. In effect, the trial court ruled Defendants successfully controverted Plaintiff's allegation that Defendants entrusted Charles with the Escort. As such, the trial court apparently viewed the AFI court's finding regarding permission as the functional equivalent of finding that Defendants never "entrusted" Charles with the car.

In effect, Plaintiff's second point reprises his first point claim that the trial court erred in entering summary judgment for Defendant because there was no substantive evidence which successfully negated [the entrustment] element of [Plaintiff's] prima facie case. As we understand it, Plaintiff contends the trial court erred when it "extrapolated" the "no permission" finding in the AFI case to mean there was "no entrustment" in Plaintiff's case. Continuing, Plaintiff argues:

> "[T]he question as to which facts constitute entrustment is debatable, and therefore a genuine issue of material fact exists. In *Sansonetti v. City of St. Joseph*, [976 S.W.2d 572 (Mo.App.1998) ] ... the court says 'an owner of an automobile may be liable for negligent entrustment if he, knowingly or having the means of knowledge, *turns his car over,*

---

**7.** The essential elements of a negligent entrustment claim are (1) the entrustee is incompetent by reason of age, inexperience, habitual recklessness, or otherwise; (2) the entrustor knew or had reason to know of the entrustee's incompetence; (3) there was an entrustment of the chattel; and (4) the negligence of the entrustor concurred with the conduct of the entrustee as a proximate cause of the harm to the plaintiff. *Evans v. Allen Auto Rental and Truck Leasing, Inc.*, 555 S.W.2d 325, 326[1] (Mo.banc 1977).

to a driver who is incompetent by reason of age, inexperience habitual recklessness...' 'Turns his car over,' the language used by the *Sansonetti* court, is broader than granting someone 'permission....' Whether the facts that led to Charles ... operating the 1988 Ford Escort constituted entrustment under a negligent entrustment cause of action is a disputed material fact for which no meaningful discovery has been conducted to date."

If Plaintiff is saying the trial court erred because "permission" is not the equivalent of "entrustment," we agree that no Missouri cases directly hold, in this factual context, that the terms "entrustment" and "permission" signify identical definitions. However, there is persuasive authority suggesting there is no practical difference in the two terms.

For instance, the *Evans* court, in analyzing the tort of negligent entrustment, cited with approval, RESTATEMENT (SECOND) OF TORTS § 390 (1965), and illustrations at 316. 555 S.W.2d at 326. In reading § 390, we note the terms "entrust" or "entrustment" are not found therein; rather, the terms "supplies" and "supplied" are used.[8] As to the RESTATEMENT illustrations at 316, we find various terms used there other than entrust. Among the terms used is "permit" as found in illustration 2: "A *permits* ... B to drive his motor car ..."[9]

We also note the *Evans* opinion set out a verdict-directing instruction and gave reasons for holding the instruction erroneous; however, the court did not criticize use of

the phrase "defendant *leased* the ... truck" or suggest, on retrial, it would be necessary to use the phrase "defendant *entrusted* ... the truck." *Id.* at 326.

In *Bell v. Green,* 423 S.W.2d 724, 732 (Mo.banc 1968), the Supreme Court of Missouri cited with approval *Thomasson v. Winsett,* 310 S.W.2d 33 (Mo.App.1958). In *Thomasson* this court reversed a judgment for the plaintiff and remanded for new trial. In doing so, we criticized certain jury instructions, *Id.* at 39, but implicitly approved a verdict director which "submitted the proposition that Winsett intentionally *permitted* Jeff to drive...." *Id.* at 36. In our discussions we noted: "[T]he person who *'knowingly permits'* such driving by a person under the age of sixteen is negligent as a matter of law." *Id.* at 36[4] (emphasis supplied). Other terms used in *Thomasson* when discussing "entrustment" were "turns an automobile over to," "surrenders" and "place the automobile in the hands of." *Id.* at 36.

In *Amador v. Lea's Auto Sales and Leasing,* 916 S.W.2d 845 (Mo.App.1996), this court specifically found a verdict director contained all essential elements of a claim for negligent entrustment, even though the entrustment element was submitted using the term "permitted," i.e.: "First, defendant ... *permitted* Robert McFall to test drive its automobile." *Id.* at 854–55 (emphasis supplied).

In *Bishop v. Morich,* 250 Ill.App.3d 366, 190 Ill.Dec. 174, 621 N.E.2d 43[3] (1993), an Illinois court specifically found "the *negligent entrustment* alleged in this case

---

**8.** RESTATEMENT (SECOND) OF TORTS § 390 (1965) provides:

"One who *supplies* directly or through a third person a chattel for the use of another whom the supplier knows or has reason to know to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm

to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Emphasis supplied).

**9.** Other terms used in the Restatement illustrations are "gives," "lends," "rents," and "sells or gives."

*can be equated with permission." Id.* at 45 (emphasis supplied). In *Grant v. Jones,* 168 Ga.App. 690, 310 S.E.2d 272 (1983), the court held there *could not be an entrustment* where the driver took the vehicle *without permission. Id.* at 275[9]. Finally, there is in *McCart v. Muir,* 230 Kan. 618, 641 P.2d 384 (1982), a statement of Kansas law which also summarizes what our research reveals about negligent entrustment law in Missouri: "A claim of negligent entrustment is based upon knowingly *entrusting, lending, permitting, furnishing or supplying* an automobile to an incompetent or habitually careless driver." *Id.* at 387[1] (emphasis supplied).

We find in the foregoing authorities ample support for the trial court's implicit finding that the terms "entrustment" and "permission" denote identical terms in the factual context of this case. The trial court did not err when it granted summary judgment for Defendants based on its finding that the doctrine of collateral estoppel precluded Plaintiff from relitigating the issue of Charles' nonpermissive driving in this negligent entrustment case. Point II is denied.

The judgment is affirmed.

MONTGOMERY, J., concurs.

BARNEY, C.J., concurs.

PARRISH, P.J., recuses.