Gregory F. YATES, Appellant,

v.

**PROGRESSIVE PREFERRED
INSURANCE COMPANY,**
Respondent.

No. WD 71859.

Missouri Court of Appeals,
Western District.

Feb. 1, 2011.

Rex V. Gump and Christian L. Faiella, Moberly, MO, for Appellant.

Joy I. Ahern, Columbia, MO, for Respondent.

Before Division II: JOSEPH M. ELLIS, Presiding Judge, and ALOK AHUJA and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

Gregory F. Yates appeals the Circuit Court of Randolph County, Missouri's ("trial court") grant of summary judgment in favor of Progressive Preferred Insurance Company ("Progressive"). The trial court held that a named driver exclusion in a policy of liability insurance issued by Progressive barred Yates's recovery on his petition for equitable garnishment. We affirm the judgment of the trial court.

**Factual and Procedural Background**

The facts are not in dispute in this case. On April 3, 2008, an automobile driven by Roberta L. Pechey ("Roberta") collided with a motorcycle driven by Yates. Roberta had a valid learner's permit and was operating the motor vehicle with the full knowledge and consent of her husband, Steven Pechey ("Steven"), a licensed adult driver, who occupied the front passenger seat while Roberta drove.

Yates filed suit in Randolph County for recovery of personal injuries sustained in the collision.

Progressive had issued a policy of insurance naming Steven as the named insured on a 1999 Dodge Stratus, the vehicle Roberta was driving at the time of the accident, which is the policy at issue in this case. The coverage period for the policy

was March 13, 2008, through September 13, 2008, which included the April 3 date of the accident. The policy contained a named driver exclusion endorsement and a named driver exclusion election. The named driver exclusion named Roberta as an excluded driver. The driver exclusion was signed by Steven but not by Roberta.

The policy had liability limits of $50,000 per person and $100,000 per accident. On April 10, 2008, Progressive notified Yates that the policy did not provide coverage for the accident. On January 13, 2009, Yates obtained a judgment against Roberta in the amount of $100,000 plus costs.

Thereafter, Yates filed a petition in equitable garnishment against Progressive. Progressive filed a motion for summary judgment, which the trial court granted, finding that Roberta was an excluded driver under the policy.

Yates brings three points on appeal. The first two points on appeal are that summary judgment was improperly granted because: (1) Roberta did not sign the driver exclusion request, as Yates claims the policy required, and the driver's exclusion request was vague and ambiguous; and (2) the driver exclusion was ambiguous because such an exclusion cannot waive coverage for a named insured (wife) and because by excluding a person who was operating the vehicle with the express permission of the named insured, the exclusion violates the omnibus insuring requirements of section 303.190.2(2).[1] Yates's third point on appeal is that the trial court erred in granting summary judgment in favor of Progressive because the named driver exclusion in the policy violates public policy and conflicts with the Motor Ve-

1. All statutory references are to RSMo 2000, as updated by the 2010 cumulative supplement, unless otherwise noted.

hicle Financial Responsibility Law ("MVFRL"), section 303.190.

Because we conclude that Progressive has raised meritorious procedural objections to Yates's first two points, and we further conclude that discussion of those points would have no precedential value, we will affirm as to those points by separate memorandum furnished to the parties pursuant to Rule 84.16(b).[2] In this opinion, we address only Yates's Point III.

## Standard of Review

■■■ "The interpretation of an insurance policy, and the determination whether coverage and exclusion provisions are ambiguous, are questions of law that [an appellate court] reviews *de novo." Burns v. Smith,* 303 S.W.3d 505, 509 (Mo. banc 2010). Similarly, allegations that a particular interpretation of an insurance policy violates the public policy of the state are reviewed *de novo. See Am. Standard Ins. Co. v. Hargrave,* 34 S.W.3d 88, 89 (Mo. banc 2000); *Ingram v. Shelter Mut. Ins. Co.,* 922 S.W.2d 854, 855–56 (Mo.App. S.D. 1996). Where the trial court has granted summary judgment, as in this case, we also review the grant of summary judgment *de novo. Burns,* 303 S.W.3d at 509. We will affirm the trial court's grant of summary judgment if it can be sustained " 'under any theory that is supported by the record.' " *Id.* (quoting *Estate of Blodgett v. Mitchell,* 95 S.W.3d 79, 81 (Mo. banc 2003)).

## Public Policy

■■■ As noted, Yates's third point on appeal is that the trial court erred in granting summary judgment in favor of Progressive because the named driver exclusion in the policy violates public policy and conflicts with the MVFRL, section 303.190. The MVFRL requires all automobile liability insurance policies to:

> insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . subject to limits, exclusive of interest and costs, with respect to each such motor vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and ten thousand dollars because of injury to or destruction of property of others in any one accident.

§ 303.190.2(2). In 1992, our Supreme Court noted that "[t]he purpose of the MVFRL is to ensure that persons injured on Missouri's highways, whether they be owners, operators, occupants of the insured's vehicle, occupants of other vehicles, or pedestrians, may collect at least minimal damage awards against negligent motor vehicle operators." *Hargrave,* 34 S.W.3d at 90 (citing *Halpin v. Am. Family Mut. Ins. Co.,* 823 S.W.2d 479, 482 (Mo. banc 1992)). An insurance policy violates public policy to the extent that it is at odds with the MVFRL. *Tinch v. State Farm Ins. Co.,* 16 S.W.3d 747, 752 (Mo.App. E.D. 2000) (citing *Halpin,* 823 S.W.2d at 482–

---

**2.** Yates's second point includes the argument that the named driver exclusion cannot exclude persons who are operating the vehicle with the express permission of the insured because such persons are required to be covered by section 303.190.2(2). To this extent, this argument is a restatement of the public policy argument set out in Point III and is, therefore, addressed by this opinion.

83). Chapter 303 also seeks to ensure that the purpose of the MVFRL is met by requiring all drivers to maintain liability coverage that meets or exceeds the statutory minimums standards set out in section 303.190.2(2). § 303.025.

In *Ingram*, 922 S.W.2d at 857, a named driver exclusion similar to the one present in the policy at issue in this case was held to be invalid as against public policy up to the minimum coverage limits found in section 303.190.2(2). The insurer in *Ingram* was therefore held to be liable for the damages sustained by the parties injured by the *specifically excluded* driver operating a vehicle otherwise covered by the liability policy. *Id.*

After *Ingram*, in 1999, the MVFRL was amended to add section 303.190.2(3). That subsection states that liability insurance policies "[m]ay exclude coverage against loss from liability imposed by law for damages arising out of the use of such motor vehicles by a member of the named insured's household who is a specifically excluded driver in the policy." The issue in this case is how section 303.190.2(3) is to be interpreted and applied. Progressive claims that section 303.190.2(3) creates an exception to the general rule, set out in section 303.190.2(2), that all automobile liability insurance policies insure any person using a covered vehicle with the permission of the named insured against loss from liability imposed by law up to the statutory minimums. In addition, Progressive claims that this added subsection, although coming three years after the *Ingram* decision, was an attempt by the legislature to abrogate *Ingram*.[3] Yates, on the other hand, argues that the added subsection was merely an attempt to codify what are known as "step down" provisions in insurance policies that limit liability coverage to the statutory minimum when the vehicle is operated by someone other than the named insured.

## A. Statutory Interpretation

■■■■ Section 303.190.2(2), which requires *every* liability policy to cover *any driver* of a covered vehicle having the permission of the named insured, and section 303.190.2(3), which allows a named insured to exclude a named driver from coverage under a policy, are seemingly in tension. "Where two statutory provisions covering the same subject matter are unambiguous when read separately but conflict when read together, the reviewing court must attempt to harmonize them and give effect to both." *Anderson v. Ken Kauffman & Sons Excavating*, 248 S.W.3d 101, 107 (Mo.App. W.D.2008) (citing *City of Clinton v. Terra Found., Inc.*, 139 S.W.3d 186, 189 (Mo.App. W.D.2004)). Moreover, courts "must use rules of statutory construction

---

**3.** We disagree with Progressive's argument that the timing of the amendment shows that the legislature "obvious[ly]" intended to abrogate *Ingram*, 922 S.W.2d 854. A similar argument was made to the Eastern District of this court in *State v. Carson*, 317 S.W.3d 136 (Mo.App. E.D.2010). In *Carson*, the statute at issue was amended by the legislature *later the same year* of a Missouri Supreme Court decision interpreting the statute. *Id.* at 140 (citing § 577.023 and its interpretation in *Turner v. State*, 245 S.W.3d 826 (Mo. banc 2008)). The court in *Carson* noted that the appellant had failed to cite to any legislative history supporting his argument that the amendment

evidenced an intent to abrogate the *Turner* decision, and refused to *assume* that the legislature had intended to abrogate the *Turner* decision by amending the statute. *Id.* The court stated, "[W]e do not know whether the legislature intended to abrogate *Turner*'s holding or simply to change the law." *Id.*

In this case, Progressive offers nothing expressly evidencing an intent to abrogate *Ingram*, only that the amendment followed the *Ingram* decision by three years. Without more, we decline to assume that the legislature's amendment of section 303.190.2 was an attempt to abrogate *Ingram*.

that 'subserve rather than subvert legislative intent.'" *Anderson*, 248 S.W.3d at 108 (quoting *Elrod v. Treasurer of Mo.*, 138 S.W.3d 714, 716 (Mo. banc 2004)). As stated above, the Missouri Supreme Court found, in a case decided after the legislature amended section 303.190.2, but applying section 303.190.2 as it existed prior to the amendment, that the purpose of section 303.190.2(2) was to ensure that injured persons were able to recover at least minimum damage awards from negligent drivers. *Hargrave*, 34 S.W.3d at 90. This case is instructive as to the original purpose of section 303.190.2(2), but because it was decided before section 303.190.2(3) became effective, it does not resolve the issue presented in this case.

The statutory named driver exclusion states simply that a policy "[m]ay exclude coverage against loss from liability imposed by law for damages arising out of the use of such motor vehicles by a member of the insured's household who is a specifically excluded driver in the policy." § 303.190.2(3). This language is unambiguous and seems to allow an exclusion such as the one at issue in this case. Yates, however, claims that this language supports his interpretation (that section 303.190.2(3) is merely a codification of the "step down" provisions), because a policy could exclude coverage otherwise provided in the policy (an amount *over and above* the statutory minimum coverage) for liability imposed by law (common law of torts) for a particular driver, while providing the full policy coverage amount for the named insured and any other driver who had not been specifically excluded. Yates argues that this interpretation harmonizes sections 303.190.2(2) and 303.190.2(3), and thus it satisfies the rule of statutory construction that "every word, clause, sentence, and provision of a statute" be given effect. *Civil Serv. Comm'n v. Bd. of Aldermen*, 92 S.W.3d 785, 788 (Mo. banc

2003). However, Yates's interpretation reads language *into* the statute by interpreting "may exclude coverage against loss" to mean "may exclude coverage against loss *above the statutory minimum.*"

■ There is nothing in section 303.190.2(2) that requires a policy providing the named insured with coverage in excess of the statutory minimums to extend that same level of coverage to other drivers. Further, the courts had already found that policies that attempt to limit coverage in a way that is inconsistent with required statutory minimums are invalid up to the statutory minimum amounts. *See Hargrave*, 34 S.W.3d at 91; *Halpin*, 823 S.W.2d at 482. Therefore, even before the enactment of section 303.190.2(3), a policy could have limited coverage for a named driver to the statutory minimums while providing more expansive coverage to the policy holder and other drivers. "When the legislature enacts a statute referring to terms which have had other judicial or legislative meaning attached to them, the legislature is presumed to have acted with knowledge of that judicial or legislative action." *Citizens Elec. Corp. v. Dir. of Dep't of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989). Yates's interpretation would thus render section 303.190.2(3) mere surplusage, a construction the law does not favor. *See Koetting v. State Bd. of Nursing*, 314 S.W.3d 812, 820 (Mo.App. W.D.2010) ("It is a general presumption of statutory construction that the legislature did not include superfluous language."). Moreover, before the amendment of section 303.190.2, courts had applied this "step down" principle not only to policies that attempt to limit the coverage extended to named excluded *drivers* in a manner that would otherwise be inconsistent with statutory minimums, but also to policies that similarly attempt to limit coverage of

certain categories of *injured persons* (i.e. family members). Yates does not explain why the legislature would have "codified" the application of the "step down" principle to one situation where the court had applied it, but not to others.

 Certainly the legislature may enact a statutory amendment that creates an exception to an existing statute. A " 'chronologically later statute, which functions in a particular way will prevail over an earlier statute of a more general nature, and the latter statute will be regarded as an exception to or qualification of the earlier general statute.' " *Moats v. Pulaski Cnty. Sewer Dist. No. I,* 23 S.W.3d 868, 872 (Mo.App. S.D.2000) (quoting *Lett v. City of St. Louis,* 948 S.W.2d 614, 619 (Mo.App. E.D.1996)); *see also Anderson,* 248 S.W.3d at 107 (citing *Moats*). A general statute must yield to a later and more specific statute in the event that the two conflict. *Smith v. Mo. Local Gov't Emp. Ret. Sys.,* 235 S.W.3d 578, 581 (Mo.App. W.D.2007). This principle favors Progressive. However, it certainly would have been clearer had the legislature used prefatory language, such as "other provisions notwithstanding," to signify its intent to create an exception.

## B. Missouri Case Law

Progressive cites *White v. Illinois Founders Insurance Company,* 52 S.W.3d 597 (Mo.App. E.D.2001) for the proposition that Missouri courts have recognized that section 303.190.2(3) creates an exception to the general rule that an owner's liability policy must provide minimum coverage to any driver operating an insured vehicle with the insured's express or implied consent. In *White,* an injured husband was driving *his own* car negligently and tried to recover under his wife's uninsured motorist policy, which specifically excluded him as a covered driver and did not cover his car. *Id.* at 598. The court in *White*

upheld the exclusion, finding that nothing made the husband an insured under the policy, and noting that the uninsured motorist statute, section 379.203, required "only that all policies of liability insurance must also include uninsured motorist coverage to persons insured thereunder." *White,* 52 S.W.3d at 600 (internal quotations and citations omitted). Progressive claims that *White* supports its position because, in *dictum* contained in a footnote, it stated that the addition of section 303.190.2(3) "expressly authorizes exclusions of specified family members from liability coverage on the specified vehicle." *White,* 52 S.W.3d at 601 n. 3.

We do not find *White* dispositive of this case. *White* applied the pre-amendment version of the MVFRL and did not, therefore, have an opportunity to analyze the effect of subsection (3) on subsection (2) of section 303.190.2. *Id.* at 601. Moreover, *White* noted that a policy exclusion might be partially enforceable, to the extent that coverage was not required by the MVFRL, even though it might be "invalid if applied to exclude *liability* or uninsured motorist coverage for operation of [an] insured vehicle" which was required by the MVFRL. *Id.* (Emphasis added.) *White,* therefore, stands for the proposition that a policy exclusion is enforceable only to the extent that it is consistent with the provisions and purpose of the MVFRL. We agree with this general principle, but the decision in *White* does nothing to shed light on how the addition of section 303.190.2(3) affects the requirements and purpose of the MVFRL.

Progressive also notes that Missouri courts have upheld other exceptions to mandatory liability coverage under section 303.190. In *Northland Insurance Company v. Bess,* 869 S.W.2d 157, 158 (Mo.App. E.D.1993), the employee exclusion provi-

sion found in section 303.190.5 was upheld. Section 303.190.5 provides:

> Such motor vehicle liability policy need not insure any liability pursuant to any workers' compensation law nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle. . . .

This provision is distinguishable from the named driver exclusion in several respects. First, this provision is not inconsistent with the express language of section 303.190.2(2), in that section 303.190.2(2) requires an owner's liability insurance policy to insure persons operating an insured vehicle with the permission of the insured. Section 303.190.5 does not exempt a class of permissive *drivers* from liability coverage; rather, it provides that certain *injured* individuals need not be covered by such a policy. Second, the exception is not inherently inconsistent with the purpose of the MVFRL as stated by the Supreme Court as employees' injuries may be presumed to be otherwise covered by workers' compensation insurance, or the driver's personal liability policy.

## C. Authority From Other States Interpreting Similar Statutory Provisions

With no Missouri case law giving a clear direction as to the appropriate application of section 303.190.2(3), we find cases from other states to be instructive. Other states with statutes similar to Missouri's, allowing named driver exclusions in policies, have interpreted these statutes as allowing insurance companies to *deny any coverage* where a named excluded driver

was operating the covered vehicle. *See, e.g., State Farm Auto. Ins. Co. v. Dressler,* 153 Ariz. 527, 738 P.2d 1134, 1137 (Ariz.Ct. App.1987); *Allstate Ins. Co. v. Detroit Auto. Inter–Ins. Exch.,* 142 Mich.App. 436, 369 N.W.2d 908, 910 (1985); *see also Thomas v. Progressive Cas. Ins. Co.,* 749 N.W.2d 678, 688 (Iowa 2008) (named driver exclusions "implicitly authorized" by the legislature). This appears to be the case even where the state courts had declared similar insurance contract provisions to have been invalid as against public policy before the authorizing statute was enacted. *See, e.g., Farmers Ins. Exch. v. Dotson,* 913 P.2d 27, 32 (Colo.1996) (declaring that a statute authorizing a "household exclusion"[4] was sufficient to allow insurer to deny coverage under that exclusion even though the courts had previously declared such exclusions as violative of public policy). *Cf. Ward v. Baker,* 188 W.Va. 569, 425 S.E.2d 245, 249 (1992) (declaring that named driver exclusions are effective to limit coverage only in excess of statutory minimums).

In states that allow named driver or household exclusions (depending on the law of the particular state) to exclude *all* coverage for accidents involving the named excluded driver or an injured party falling within a category of persons that are excluded from coverage, courts usually emphasize the public policy that *favors* these provisions. Policies with named driver exclusions " 'enabl[e] drivers with family members having poor driving records to procure affordable insurance, rather than obtaining coverage from an assigned risk pool at a greater cost or not securing insurance at all.' " *Thomas,* 749 N.W.2d

---

4. A "household exclusion" allows injured family members to be excluded from making claims for injuries arising from the operation of a covered vehicle by an insured family member. Such "household exclusions" are not expressly addressed in Missouri's statutes and have been found to be against public policy under Missouri's MVFRL. *See Halpin,* 823 S.W.2d at 482.

at 688 (quoting *St. Paul Fire & Marine Ins. Co. v. Smith*, 337 Ill.App.3d 1054, 272 Ill.Dec. 666, 787 N.E.2d 852, 858 (2003) (alteration ours)). Additionally, because these policy exclusions subject automobile owners to personal liability, they deter these owners from negligently entrusting their automobiles to unsafe excluded drivers, which helps to keep these drivers off of the roads. *See id.* Maryland law so favors named driver exclusions that insurance companies are *required* to offer them before canceling, declining to renew, or increasing premiums on automobile insurance policies for households having one or more dangerous drivers and at least one driver who is not dangerous. *See* MD. CODE. ANN. INS. § 27–609(a)(1)(ii) (2007); *Wilkerson v. Michael*, 104 Md.App. 730, 657 A.2d 818, 823 (Md.Ct.Spec.App.1995). We find these cases persuasive.

The purpose of the MVFRL prior to the enactment of section 303.190.2(3), was to ensure that persons injured on Missouri highways may collect at least minimal damage awards against negligent motor vehicle operators. The amendment that added section 303.190.2(3) evidences another important purpose of the law. That is to encourage all owners to obtain coverage by removing an impediment to obtaining coverage and to encourage owners not to allow uninsured drivers to operate their vehicles. Therefore, the named driver ex-

clusion in Steven Pechey's policy does not violate public policy as articulated by the legislature in section 303.190.2.

Because section 303.190.2(3), taken by itself, is unambiguous, allowing for named driver exclusions to automobile liability policies, and because named driver exclusions are not necessarily contrary to public policy, we hold today that the named driver exclusion in the Progressive policy at issue was effective to prevent all coverage for damages occurring due to Roberta's driving of the covered automobile, as she was expressly excluded as a covered driver.[5]

## Conclusion

Yates's first two points on appeal, for the reasons stated in the memorandum provided to the parties, are denied. For the reasons stated above, we also hold that the named driver exclusion in the Progressive insurance policy is effective to exclude coverage for injuries caused by Roberta's driving the vehicle. Accordingly, we affirm the judgment of the trial court.

JOSEPH M. ELLIS, Presiding Judge, and ALOK AHUJA, Judge, concur.

---

5. We note that the enactment of section 303.190.2(3) may have affected what constitutes a misdemeanor under section 303.025. Section 303.025 makes it a misdemeanor for an automobile owner to fail to "maintain[ ] the financial responsibility which conforms to the requirements of the laws of this state," or to allow another person to operate such automobile unless the owner maintains the financial responsibility which conforms to the requirements of the laws. Before the enactment of section 303.190.2(3), an owner was required to maintain insurance that covered all permissive operators. Therefore, section 303.025 made it a misdemeanor for an

owner to allow another to drive his or her vehicle if that driver was not covered by liability insurance. Because a named driver exclusion now may be said to conform to the requirements of the laws of the state of Missouri, an automobile owner could allow an uninsured driver to operate his vehicle and still not be guilty of a misdemeanor under section 303.025. We assume that the legislature did not intend for owners who permit excluded drivers to operate their vehicles to escape misdemeanor liability. Therefore, we take this opportunity to point out what we believe to be an unintended consequence of the enactment of section 303.190.2(3).