700 P.2d 874

Freddie R. GOMEZ, a widower, individually; Rebecca M. Gomez, individually, and as parent and next friend of Lorraine Gomez, Laura Gomez and Janette Gomez, Plaintiffs/Appellants,

v.

Doug HENSLEY, individually and dba G & H Trucking; Robert Ledford, individually and dba Barritz Trucking; David Haigler, individually and dba Barritz Trucking; and Robert Holman, individually and dba G & H Trucking, Defendants/Appellees.

No. 2 CA–CIV 5142.

Court of Appeals of Arizona, Division 2.

Dec. 11, 1984.

Review Denied Feb. 26, 1985.

Douglas & Gustafson by Randall R. Douglas, Phoenix, and Lipsky & Blickenstaff, by Gary P. Ablard and Kenneth C. Blickenstaff, Claremont, Cal., for plaintiffs/appellants.

Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for defendants/appellees Hensley and Holman dba G & H Trucking.

Lesher & Borodkin, P.C. by Stephen H. Lesher, Tucson, for defendants/appellees Ledford and Haigler.

## OPINION

HOWARD, Judge.

This is an appeal from the granting of a summary judgment in a wrongful death action. Plaintiffs filed a bizarre pleading in the trial court which they called a motion for partial summary judgment as to certain legal issues and/or a motion in limine. They asked the court to rule that they had enough evidence to show a prima facie case and that they could introduce evidence of a "convoy" at trial.

Defendants filed an opposition and asked for summary judgment in their favor based upon the contents of plaintiffs' motion. The trial court granted defendants' motion and plaintiffs appeal.

The facts considered in the light most favorable to plaintiffs are as follows. In the early morning hours of July 3, 1981, plaintiffs were passengers in a pickup truck being driven westbound on Interstate 10 near Toltec, Arizona. At that time a semi tractor trailer rig driven by William McGlothlin (Tennessee Bill), an employee of Pronto Trucking, collided with the pickup truck in which plaintiffs and plaintiffs' decedents were riding. As a result of the collision, Freddie R. Gomez' wife, Alice Gomez, and his two sons, Fred Gomez, Jr. and John Gomez, were killed. Additionally, plaintiffs Freddie R. Gomez, Rebecca M. Gomez, and her three minor daughters, Lorraine, Laura and Janette Gomez, sustained personal injuries. The depositions of two witnesses, Dave Funk and Ricky Merritt, disclosed that just prior to the accident the trucks driven by defendants Doug Hensley and Larry Ledford were "running" with the truck being driven by McGlothlin. McGlothlin's truck was in the lead. Funk was traveling on Interstate 10 at approximately 70 m.p.h. in a 55 m.p.h. zone when the three trucks passed him going in the same direction. Funk had made a previous statement in which he said that the trucks passed him while traveling at about 80 m.p.h. According to Funk the trucks were traveling close together and he heard the name "Tennessee Bill" being mentioned on his CB radio.

Ricky Merritt was also driving a truck on Interstate 10 near Toltec at the time of the accident. The three trucks with McGlothlin in the lead came up on him so fast that he thought he was going to be rear-ended. Merritt was traveling at approximately 60 m.p.h. Two other trucks were following very close behind the McGlothlin truck. Merritt listened to the conversations of the three truck drivers on the CB radio. The driver of the lead vehicle was called Tennessee Bill. One of the two trucks that was following close behind mentioned to Tennessee Bill that he was going to get to Los Angeles right during the rush hour and the traffic would be bad. Tennessee Bill replied, "Well, if you guys will hang on with me or stick with me, we will be there before rush hour gets started." Merritt testified that the three trucks were "run-

ning together" and all three of the drivers were talking to each other.

Hensley, one of the defendants, gave a statement in which he said he was the driver of the third truck in line. They had been "running together" since Tucson. They were all headed for the Los Angeles area.

Defendants, who are the owners and drivers of the second and third trucks, contend that there was no evidence of any negligence on their part. Plaintiffs contend that the evidence discloses negligence based upon § 876(a) and (b) of the Restatement (Second) of Torts. We agree with plaintiffs and reverse.

A motion for summary judgment can be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Hensley v. Town of Peoria*, 14 Ariz.App. 581, 485 P.2d 570 (1971). Summary judgment should not be granted when there is an issue of fact or the slightest doubt as to the facts. *Lujan v. MacMurtrie*, 94 Ariz. 273, 383 P.2d 187 (1963). Defendants, conceding all the facts in favor of plaintiffs, contend that there is no viable legal theory which would allow a trier of fact to find the defendants liable for plaintiffs' injuries and damages. We do not agree. Restatement (Second) of Torts § 876 (1979) states:

"For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself ...."

The Restatement contains the following Comments on Clauses (a) and (b) of § 876:

**Comment on Clause (a):**

"*a.* Parties are acting in concert when they act in accordance with an agreement to cooperate in a particular line of conduct or to accomplish a particular result. The agreement need not be expressed in words and may be implied and understood to exist from the conduct itself. Whenever two or more persons commit tortious acts in concert, each becomes subject to liability for the acts of the others, as well as for his own acts. The theory of the early common law was that there was a mutual agency of each to act for the others, which made all liable for the tortious acts of any one.

\*　　\*　　\*　　\*　　\*　　\*

2. A and B are driving automobiles on the public highway. A attempts to pass B. B speeds up his car to prevent A from passing. A continues in his attempt and the result is a race for a mile down the highway, with the two cars abreast and both travelling a dangerous speed. At the end of the mile, A's car collides with a car driven by C and C suffers harm. Both A and B are subject to liability to C.

\*　　\*　　\*　　\*　　\*　　\*

*c.* In order for the rule stated in Clause (a) to be applicable, it is essential that the conduct of the actor be in itself tortious. One who innocently, rightfully and carefully does an act that has the effect of furthering the tortious conduct or cooperating in the tortious design of another is not for that reason subject to liability.

**Comment on Clause (b):**

*d.* Advice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act. This is true both when the act done is an intended trespass and when it is merely a negligent act. The rule applies whether or not the other knows his act is tortious. It likewise applies to a person who knowingly gives substantial aid to another

who, as he knows, intends to do a tortious act.

The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered. Likewise, although a person who encourages another to commit a tortious act may be responsible for other acts by the other, ordinarily he is not liable for other acts that, although done in connection with the intended tortious act, were not foreseeable by him. In determining liability, the factors are the same as those used in determining the existence of legal causation when there has been negligence or recklessness."

The plaintiffs seek to analogize the facts here to those of Illustration 2 in the Comment to Clause (a) of § 876 and the cases dealing with the liability of participants in a highway automobile race. See cases in Annot. 13 A.L.R.3d 431 (1967). These cases hold that persons who race automobiles on a highway are liable and negligent for injuries caused by one of them. See *Orszulak v. Bujnevicie*, 355 Mass. 157, 243 N.E.2d 897 (1969). Defendants counter this argument by contending that the racing cases are not analogous since liability in the racing cases is based upon competition and the concept of challenge and response. See, e.g., *Finn v. Morgan*, 46 A.D.2d 229, 362 N.Y.S.2d 292 (App.1974) and *Walker v. Hall*, 34 Md.App. 571, 369 A.2d 105 (App.1977). Defendants misconceive the analogy. *Finn v. Morgan*, supra, and *Walker v. Hall*, supra, speak about competition, challenge and response because of the necessity of showing that the defendants in those cases were acting in concert. In other words, if you want to prove liability based upon the fact that the vehicles were in a race, you must show a race and not merely the fact that the vehicles were speeding down the highway. Here, the facts show more than just three trucks speeding down the highway. Ex-

changes that took place over the CB radio plus the conduct of the parties are capable of being interpreted as showing an agreement among the truck drivers that they would travel in excess of the speed limits in order to get to Los Angeles with Tennessee Bill leading the way. They would be engaged in a tortious act—speeding, in concert with each other and would fall within Restatement (Second) of Torts, § 876(a). Furthermore, their action in "running with" Tennessee Bill could be interpreted as giving encouragement to Tennessee Bill to exceed the speed limits and bring their conduct within § 876(b). This conduct would differ from a racing situation only in one aspect. No one was trying to win the speed contest here.

Reversed and remanded for further proceedings consistent with this opinion.

BIRDSALL, C.J., and HATHAWAY, J., concur.