**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 3, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CHRISTOPHER KEITH,
individually and as personal
representative of the deceased,
Heather Donahue,

      Plaintiff-Appellant,

v.

J.A., a minor, individually,

      Defendant-Appellee,

   and

JOHN B. AMES, individually and in
his capacity as natural parent and
guardian of J.A., a minor; and in loco
parentis of G.D., a minor,

      Defendant.

No. 07-8093
(D.C. No. 2:07-CV-27-CAB)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Heather Donahue, the wife of plaintiff Christopher Keith, was killed after she was struck by G.D., a snowboarder, at the Laramie Bowl portion of the Jackson Hole Ski Resort in Wyoming. At the time of the accident G.D. was 17 years' old. He was on the latest of a number of ski vacations that he had taken with defendants John B. Ames and J.A., Mr. Ames's minor son. Mr. Keith originally sued Mr. Ames and J.A. for negligence and wrongful death in Wyoming state court, but the case was removed to federal court. The district court granted summary judgment to the defendants. Mr. Keith now appeals the judgment in favor of J.A., arguing that a jury could properly have found J.A. liable under the theory of recovery set forth in Restatement (Second) of Torts § 876 (1979) (Restatement), that he presented such a claim to the district court, and that the court therefore erred in failing to determine whether Wyoming would adopt § 876. We have jurisdiction under 28 U.S.C. § 1291. Because we decide that summary judgment would have been proper even if § 876 had been applied, we affirm.

## I. Background

At the time G.D. began his fateful run, he and J.A. had already finished one run down the groomed portion of the Laramie Bowl. During the run the boys had obtained "fairly good speed." Aplt. App. at A-22. They then met Mr. Ames and all rode the ski-lift up together to take a second run down the bowl. After the

three exited the lift, J.A. skied about half-way down the run and took a position to the side of the run in order to film G.D.'s descent. When J.A. was in position, he signaled G.D. to begin his run. Mr. Ames followed at a slower pace, losing sight of G.D. after a few turns.

G.D. passed Mr. Keith, who was also skiing[1] the Laramie Bowl. Mr. Keith testified that he was traveling approximately 45 miles per hour and that G.D. was traveling approximately 15 to 20 miles per hour faster than he was. As G.D. passed J.A., J.A. commented, "[H]e's flying." Aplee. App. at A-54. After passing J.A., G.D. collided with Ms. Donahue. She died the next day from injuries sustained in the collision. Mr. Keith testified that after the collision, J.A. hysterically apologized, repeatedly saying "'We're so sorry.'" Aplt. App. at A-30.

## II. Analysis

In this diversity case we apply the substantive law of Wyoming, but federal law governs the propriety of summary judgment. See *Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007).

> Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] J.A. and G.D. were snowboarding at the time of the accident, and Mr. Keith and his wife were skiing. We use the term skiing to cover both activities.

In applying this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. Summary judgment is appropriate if the evidence is such that no reasonable jury could return a verdict for the nonmoving party.

*Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916, 920 (10th Cir. 2008) (citation and internal quotation marks omitted).

Mr. Keith claimed that J.A. was liable to him for negligence and that this negligence caused the wrongful death of his wife. *See* Wyo. Stat. Ann. § 1-38-101 (wrongful death statute). In Wyoming, "the essential [elements] of negligence are a duty on the part of a defendant and a failure to perform the duty which proximately caused damage to the plaintiff." *ABC Builders, Inc. v. Phillips*, 632 P.2d 925, 931 (Wyo. 1981). "The question of the existence of a duty is a matter of law for the court to decide." *Hamilton v. Natrona County Educ. Ass'n*, 901 P.2d 381, 384 (Wyo. 1995) (internal quotation marks omitted).

On appeal Mr. Keith argues that J.A. violated the duty owed under Restatement § 876.[2] Assuming without deciding that this argument was properly raised and that Wyoming would apply § 876 in this factual situation, we hold that affirmance is still required.

---

[2] We do not read Mr. Keith's appellate briefs as arguing that the evidence was sufficient to present a claim under Restatement § 315. But to the extent that he may be arguing this on appeal, we affirm for the reasons set forth in the district court's summary-judgment order.

Section 876, entitled "Persons Acting In Concert," states:

For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he

(a) does a tortious act in concert with the other or pursuant to a common design with him, or

(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or

(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Mr. Keith relies on clause (b). As he points out, the comment to that clause explains that

[a]dvice or encouragement to act operates as a moral support to a tortfeasor and if the act encouraged is known to be tortious it has the same effect upon the liability of the adviser as participation or physical assistance. If the encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act.

The illustrations in the comment to clause (b) include (1) an individual encouraging another to throw rocks during a riot (Ill. 4); (2) a policeman advising another to use illegal methods of coercion (Ill. 5); and (3) two members of a hunting party, in each other's presence, negligently shooting across a public road at an animal (Ill. 6).

Mr. Keith argues that J.A. knew that G.D. was a skilled skier and that he liked to ski fast, that the two had just finished skiing the Laramie Bowl with "pretty good speed," Aplt. Opening Br. at 22 (internal quotation marks omitted), and that the district judge said that it was reasonable to infer under the circumstances that J.A. knew that G.D. was going to ski fast on the second run. But knowing that your skiing partner is going to ski "fast" is not the same as knowing he is going to ski out of control. Mr. Keith admits that "there is no evidence that [J.A.] actively encouraged [G.D.] to ski at a reckless speed." *Id.* at 24. And he testified that he had no evidence that J.A. encouraged G.D. to ski "fast" or "out of control," Aplee. App. at A-65, nor evidence of any "agreement between [G.D.] and [J.A.] about how [G.D.] planned to snowboard down the Laramie Bowl," *id*. at A-63. Mr. Keith testified that he himself "usually ski[ed] pretty fast," that he estimated that he was traveling 45 miles per hour when G.D. passed him, and that he "[a]bsolutely" felt that his skiing was under control. Aplt. App. at A-32 through A-34. J.A. testified that "prior to [the] accident, [he] had already seen [G.D.] ski in control so [he] always thought [G.D.] was pretty much in control," and that he had never seen G.D. ski as fast as he was going right before the accident. Aplee. App. at A-54. G.D. testified that he had never been involved in a ski accident with another person before his collision with Mr. Keith's wife, that he had never been involved in a solo crash requiring medical

-6-

attention, and that he had never previously been disciplined by a ski-patrol member for any reason.

Mr. Keith further argues that J.A. is culpable because he "agreed to stage the . . . run at a time when he knew there would likely be other skiers on the run with less experience than he and [G.D.]," agreed to film the run, and signaled to G.D. when he was ready for him to begin the run.[3]  Aplt. Opening Br. at 23. These actions, however, are not evidence of a prior knowledge that the run would be tortious.  In particular, it is not negligence in itself to ski where less-experienced skiers are also present.

Finally, Mr. Keith argues (1) that J.A.'s comment that G.D. was "really flying," creates a reasonable inference that G.D.'s speed was fully anticipated, and (2) that J.A.'s apologies to Mr. Keith after the accident create a reasonable inference that J.A. was partially responsible.  We disagree.  Although the "really flying" comment indicates that G.D. was going faster than normal, J.A. testified that he, too, was surprised by G.D.'s speed.  And although J.A.'s apologies could support an inference that in some sense he *felt* responsible, they cannot substitute

---

[3]      Although the appendices provided by the parties do not show that J.A. signaled for G.D. to begin his run, we will assume that this occurred.  Mr. Keith asserts on appeal that J.A.'s signal for G.D. to begin his run was an "all clear sign" and that "[J.A.] had positioned himself halfway down the run knowing that [G.D.], standing at the top of Laramie Bowl, could not see the lower half of the slope and, therefore, could not determine for himself whether the slope was sufficiently clear to permit a fast run."  Aplt. Opening Br. at 23.  But the appendices include no evidence presented on summary judgment to support an assertion that J.A. agreed to serve as a spotter for G.D. during his run.

for evidence of what J.A. actually did or knew. G.D. testified that he had no conversation with J.A. regarding how he was going to ski, including the route he was going to take and the number of turns he was going to make, and no contradictory evidence was presented. Neither the "really flying" comment nor the apologies were sufficient to allow a reasonable jury to find that J.A. encouraged G.D. to ski in a tortious manner or knew that he was going to do so. In sum, the evidence would not support an inference that J.A. would have expected G.D. to ski negligently.

J.A.'s involvement in the accident is readily distinguishable from the involvement of those held liable in the decisions cited by Mr. Keith. In several, the defendant, unlike this case, was engaging in the same negligent activity as the companion who injured the plaintiff. *See Hellums v. Raber*, 853 N.E.2d 143 (Ind. Ct. App. 2006) (hunters firing in same direction)*; Bellamy v. Edwards*, 354 S.E.2d 434 (Ga. Ct. App. 1987) (speeding automobiles); *Gomez v. Hensley*, 700 P.2d 874 (Ariz. Ct. App. 1984) ("convoy" of speeding trucks); *Orser v. Vierra*, 60 Cal. Rptr. 708 (Cal. Ct. App. 1967) (hunters shooting at same target). In others, the defendant explicitly encouraged a companion to act wrongfully. *See Cooper v. Bondoni*, 841 P.2d 608 (Okla. Civ. App. 1992) (passengers encouraged driver to speed and pass vehicle in no-passing zone); *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1 (Mo. Ct. App. 1996) (similar); *Smith v. Thompson*, 655 P.2d 116 (Idaho Ct. App. 1982) (employer repeatedly said that it would be

nice if someone burned down his neighbor's house); *Cobb v. Indian Springs, Inc.*, 522 S.W.2d 383, 384-387 (Ark. 1975) (security guard suggested to underage driver that he take his car "down to the dairy bar and run it back up here and see what it will do").

In the remaining two cited cases the encouragement was significantly greater than any implied encouragement in this case. In *Sloan v. Fauque*, 784 P.2d 895 (Mont. 1989), the defendants and Mark Barnes had been at a keg party when some intruders stole the keg. Barnes and the defendants agreed to pursue the intruders in Barnes's car and beat them up. Barnes drove far above the speed limit to catch the intruders and then the two speeding vehicles took turns passing each other until they collided. The defendants' participation in the enterprise (pursuing the intruders to beat them up) was clear encouragement to Barnes's unsafe driving. And in *Podias v. Mairs*, 926 A.2d 859 (N.J. Super. Ct. App. Div. 2007), the driver and passengers in a vehicle that had struck a motorcyclist fled the scene, leaving the cyclist lying injured in the middle of the road to be run over by another vehicle. The court determined that "it [was] reasonable to infer that at the very least defendants [(the passengers)] collaborated in, verbally supported, or approved [the driver's] decision to leave the scene, and at most actively convinced [the driver] to flee as a means of not getting caught." *Id*. at 868.

The Restatement comment on clause (b) of § 876 states:

The assistance of or participation by the defendant may be so slight that he is not liable for the act of the other. In determining this, the nature of the act encouraged, the amount of assistance given by the defendant, his presence or absence at the time of the tort, his relation to the other and his state of mind are all considered.

Here, any encouragement to G.D.'s tortious conduct was too slight to support liability.

### III. Conclusion

The judgment of the district court is AFFIRMED.

Entered for the Court


Harris L Hartz
Circuit Judge